PAID    FILED

MAY -3 2022

Clerk, US District Court
COURT #012

2022 MAY -3 PM 1:15

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: EEE

1  "In Care of"'
2  Mareine M. Plong    [Sovereign]
   Brendem Plong    [Sovereign]
3  1720 W. Imperial Ave
   Lancaster, CA 93534
4  Phone | (818) 448-1539
   Email: mareinep@aol.com
5
6  Plaintiffs In Pro Per

7           UNITED STATES DISTRICT COURT
8           CENTRAL DISTRICT OF CALIFORNIA

9
   Mareine M. Plong & Brendem Plong      Case No.:
10 [Sovereign] In Pro Per,
                                         LACV22-2939-MEMF(GJSx)
11         Plaintiffs,
                                         COMPLAINT FOR WRONGFUL
12 vs.                                   FORECLOSURE DECLARATORY RELIEF
                                         AND FOR DAMAGES ARISING
13
   BRITNEY FISHER (attorney in fact) for   1. LACK OF STANDING FORECLOSE
14 FEDERAL HOME LOAN MORTGAGE             2. BREACH OF CONTRACT
   CORPORATION, as trustee for FREDDIE    3. FRAUD BY CONCEALMENT
15 MAC seasoned credit risk transfer trust, 4. FRAUD BY INDUCMENT
   series 2017-2, as owner of related     5. INTENTIONAL INFLICTION OF
16 mortgage loan, NATIONSTAR                 EMOTIONAL DISTRESS
   MORTGAGE LLC, d/b/a MR. COOPER        6. SLANDER OF TITLE
17 (SERVICER); QUALITY LOAN SERVICE      7. QUIET TITLE
   CORP. (Debt Collector) ADRIANA        8. DECLARATORY RELIEF
18 BANUELOS (ASS. VP), RONALD ALONZO     9. VIOLATION OF TILA, 15 U.S.C. §2601,
19 (Ass. Secretary.); McCARTHY &            et seq.
   HOLTHUS, LLP (Law Firm) Attorney      10. VIOLATION OF RESPA 15 U.S.C.§2601,
20 MATTHEW E. PODMENIK, Esq. (SBN           et seq.
   219364), MELISSA ROBBINS COUTTS      11. VIOLATION OF BUSINESS AND
21 Esq. (SBN 246723), DEBORAH A. BOYD,     PROFESSIONAL CODE SECTION 17200
   Esq. (SBN 136296), and DOES 1 through 12. VIOLATION OF§1788.17 OF THE RFDCPA
22 100 inclusive,                        13. VIOLATION OF CIVIL CODE §1572
23                                        14. TEMPORARY RESTRAINING ORDER
                                             INJUNCTIVE RELIEF
24                                        15. CANCELLATION OF INSTRUMENTS

25         Defendants.                    DEMAND FOR JURY TRIAL

26                                        RESERVE THE RIGHT TO AMEND

27    TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF
28                              RECORD

                                   1

COMES NOW the Plaintiffs, Brendem Plong, [Sovereign] Pro Per & Mareine M. Plong, [Sovereign] Pro Per ("Plaintiffs"), complaining of the Defendants as named above, and each of them, as follows:

### JURISDICTION

Venue is proper in Los Angeles County, as the actions complained of occurred in Los Angeles County. This Court has jurisdiction pursuant to the following statutes: 28 U.S.C. §1332, (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between. 1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United State and are domiciled in the same State; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and *(4) charge the employer for breach of fiduciary obligations under the EMPLOYER'S CHARTER DEMAND THEY PRODUCE the corporate charter! If they have no corporate charter, they must be either a) government or b) fraudulent. They are government, they have fiduciary obligations to the People* (5) a foreign state, defended in section 1603(a) of this title, as plaintiff and citizens of a State or of different States. Defendants are engaged in violations of California state laws including *CALIFORNIA CIVIL CODE(S) 2923.5, 2923.6, 2923.52, 2924, 2924(a), 2924(h); 2934(a), 2932.5, 2929; Fraud and Deceit CALIFORNIA CIVIL CODE 1710(1); Unfair Practices Act CALIFORNIA BUSINESS AND PROFESSIONS CODE sec 17000, 17200-17210*. Venue is appropriate in this judicial district *under 28 U.S.C. § 1391(h)* because the events that gave rise to this Complaint occurred in this judicial district Venue is conferred as the Private Land is located at 1720 W. Imperial Ave, Lancaster California 93534. Where all transaction took place and all parties reside within Los Angeles County, California, which is within the jurisdiction of the **UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA.**

A complaint may not be dismissed on motion it states some sort of claim, baseless though it may eventually prove to be, and inartistically as the complaint may

be drawn. Therefore, under our rules, the plaintiff's allegations that we are suing in 'criminal libel' should not be literally construed. [3] the complaint is hard to understand but this, with nothing more, should not bring about a dismissal of the complaint, particularly is where plaintiffs are not represented by counsel, and in view of rule 8{f} of the rules of civil procedure, *28 U.S.C. which requires that all pleadings shall be construed as to do substantial justice BURT VS. CITY OF NEW YORK, 2Cir., (1946) 156 F.2d 791.*

Plaintiff are proceeding without assistance of counsel unschooled in law, Pro Per, requesting the court accept direction from Haines v. Kerner, 404 U.S. 519 (1972), Boags v. MacDougall, 545 US 360 (1982), Puckett v. Cox 456 F2d 233 (1972) Six Circuit USCA), and Conley v. Gibson, 355 US 41 at 48(1957), ESTELLE, CORRECTIONS DIRECTION, ET AL. v. GAMBLE 29 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251, WILLIAM MCNEIL, PETITTONER v. UNITED STATES 113 S. Ct. 1980, 124 L. Ed. 2d 21, 61 U.S.L.W. 4468,: BAKLDWIN COUNTY WELCOME CENTER v. BROWN 466 U.S. 147, 104 S. Ct. 1723, 80 L. Ed. 2d 196, 52 U.S.L.W. 3751, wherein the court has directed those who are unschooled in law making pleadings shall have the court look to the substance of the pleadings rather than the form. Pro Per pleadings are to be considered without regard to technicality; Pro Per litigants are not to be held to the same high standards to perfection as lawyers. Maty v. Grass., 303 Elli Chemical U.S. 197 (1938), B. Plat sky v. CIA, 953 F.2d 25, 26 28 (2nd Cir. 1991), "Court errors if court dismisses pro per litigant without instruction of how pleadings are deficient and how to repair pleadings. Accordingly, the complaint will not be dismissed for insufficiency. [4,5] Since the Federal Courts are courts of limited jurisdiction, plaintiff always show in our complaint the grounds upon which that jurisdiction depends." *STEIN VS. BROTHERHOOD OF PAINTERS, DECORATORS, AND PAPER HANGERS OF AMERICA, DCCDJ (1950), 11 F.R.D. 153.*

"Plaintiff's reserves the right to amend this complaint as new evidence comes to light and complaints and for causes of action alleges as follows:

### HEREIN:

Plaintiffs hereby allege as follows:

1.    Plaintiffs are and at all times relevant has been a resident of the County of Los

Angeles, States of California and the lawful owner of a parcel of Real Property commonly
known as:     1720 W. Imperial Ave, Lancaster, CA 93534.

APN:          3122-040-082        Legally Described as follows:

            LOT 3 OF TRACT MAP 52655, IN THE CITY OF LANCASTER, COUNTY OF
            LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 1320,
            PAGE 96 THROUGH 100 INCLUSIVE OF MAPS, IN THE OFFICE OF THE
            COUNTY RECORDER OF SAID COUNTY. ASSESSOR'S PARCEL NUMBER
            3122-040-082.     (hereinafter "Subject Property").

2.      This is an action brought by Plaintiffs for declaratory judgment, Quiet Title,
injunctive and equitable relief, and for compensatory special, general and punitive
damages.  Plaintiffs, Homeowner, disputes the title and ownership of the real property
on question (the "Home'), which is the subject of this action, in that the originating
alleged Mortgage Lender, (COUNTRYWIDE HOME LOANS, INC.) and the Originating
alleged Trustee (RECONTRUST COMPANY, N.A.) named in the note signed by
Borrower August 6, 2007, cannot produce record of a Loan account receivable to
validate that lawful consideration was given to constitute a binding contract.

3.      Plaintiffs are informed and believes and therefore alleges that the so-called Loan
that the Deed of Trust Show the Originating Lender to be (COUNTRYWIDE HOME
LOANS, INC.) actually was funded by monetizing Brendem Plong & Mareine M. Plong
autograph on the promissory note (UCC 8-102,201).

4.      Plaintiffs further allege on information and belief that the Deed of Trust signed by
Brendem Plong & Mareine M. Plong on August 6, 2007, was fraudulent introduced into
the transaction to hide the true nature of the transaction and the fact that once Plaintiffs
signed the Promissory Note, and it was negotiated the property was paid for in full.

5.      Plaintiffs further alleges that the Foreclosure Sale of the Subject Property was
improper and fraudulent because there never was a valid obligation that so-called
Lender was entitled to collect on since there were no lawful considerations given by the
so-called Lender (COUNTRYWIDE HOME LOANS, INC.) named in the invalid Deed of
Trust.

6.      Plaintiff further alleges that the FREDDIE MAC is a Government Sponsored
Enterprise doing business in the County of Los Angeles, State of California.  Plaintiffs

are informed and believe and thereon allege that FREDDIE MAC is Sponsor of the FREDDIE MAC Series 3366 Trust.

7.      Plaintiffs are further informed and believe, and thereon allege that payment for full value of the entire instrument was executed in an ordinary course of business from FREDDIE MAC to COUNTRYWIDE HOME LOANS, INC. There are no documents or records Defendants can be produced that demonstrate that prior to the September 28, 2007, closing date for the FREDDIE MAC SERIES 3366 Trust, the Tangible Note was duly endorsed, transferred, and delivered to FREDDIE MAC SERIES 3366 TRUST.

8.      Plaintiffs further alleges (hereafter "BANK OF AMERICA, N.A.) and others alleged to have ownership, have unlawfully sold, assigned and/or transferred our ownership and security interest in a Promissory Note and Deed of Trust related to the Property, and thus, **DO NOT** have lawful ownership or a security interest in Plaintiffs Home which is described in detail herein.

## THE PARTIES

Plaintiffs are now, and at all times relevant to this action, a resident of the County of Los Angeles, State of California.

9.      At all times relevant to this action, Plaintiffs owned and has superior claim to the Real Property (the "Home") Located at 1720 W. Imperial Ave, Lancaster CA 93534.

10.     Defendants FEDERAL HOME LOAN MORTGAGE CORPORATION ("FHLMC" as trustee for FREDDIE MAC (hereinafter "FREDDIE") Seasoned Credit Risk Transfer Trust, Series 2017-2, as owner of Related Mortgage Loan, BRITNEY FISHER (attorney in fact") is a corporation doing business in the County Denton, State of Texas. Plaintiffs are further informed and believe, and thereon allege that FEDERAL HOME LOAN MORTGAGE CORPORATION (hereinafter "FHLMC"), is the Investor of the loan. FEDERAL HOME LOAN MORTGAGE CORPORATION the prepared the documents to

11.     Defendant FREDDIE MAC (hereinafter "FREDDIE") is Trustee for the securitized FREDDIE MAC series 3366 Trust. Plaintiffs are informed and believe, an thereon allege that Defendant FREDDIE MAC, is a Satanic/Luciferian Globalists Government Sponsored Criminal Enterprise doing fraudulent, extortion, and racketeering business in the County of Los Angeles, State of California and is the purported Trustee for the Fraudulent Securitized Trust and/or a purported participant in the imperfect

securitization of the Note and/or the Deed of Trust as ore particularly described in this Complaint.

12.     Plaintiffs are informed and believe, and thereon allege that Defendant FREDDIE MAC is a Satanic/Luciferian Globalists Government Sponsored Criminal Enterprise doing business in the County of Los Angeles, State of California and is the purported Sponsor for Fraudulent Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust as more particularly described in this Complaint.

13.     Defendant NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER, (hereinafter "MR. COOPER") Servicer, c/o by BRITNEY FISHER (its Attorney in fact). Plaintiffs are informed and believe, and thereon allege that Defendant NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER is a Servicer doing business in the County of Denton State of Texas, address at 8950 Cypress Waters Blvd, Coppell, TX 75019 and is the Servicer a purported participant in the imperfect securitization of the Note and/or the Deed of Trust as more particularly described in this Complaint.

14.     Defendant QUALITY LOAN SERVICE CORPORATION, (hereinafter "QLS" debt Collector) ADRIANA BANUELOS (Ass. VP) RONALD ALONZO (Ass. Sec.) is a Fraudulent Substitute of Debt Collector Attempting to collecting a FAKE debt that the Satanic/Luciferian Globalist Institutions and agencies created out of thin air.  Plaintiffs are informed and believe, and thereon alleged that Defendant NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER is a Servicer. A large number of non-judicial foreclosure pursuant to the statutes herein challenge as illegal, namely California Civil Code §§ 2924-2924i. and now assigned to QUALITY LOAN SERVICE CORPORATION (a Non-Judicial Foreclosure Company), c/o by ADRIANA BANUELOS (Ass. VP), RONALD ALONZO (Ass. Secretary) agent/employee who attempting to foreclosure on our real property in a "Trustee Sale" address at 2736 Camino Del Rio South, San Diego, CA 92108.

15.     Defendant/Attorney MCCARTHY & HOLTHUS, LLP (Law Firm) c/o by Attorney MATTHEW E. PODMENIK, Esq. (SBN 219364), MELISSA ROBBINS COUTTS Esq. (SBN 246723) and DEBORAH A. BOYD, Esq. (SBN 136296), (hereinafter McCARTHY") are Fraudulent Attorney of Debt Collector Attempting to collecting a FAKE

debt that the Satanic/Luciferian Globalist Institutions and agencies created out of thin air. Plaintiffs are informed and believe, and thereon allege that Defendant McCARTHY & HOLTHUS, LLP (Law Firm) is a Attorney, a large number of non-judicial foreclosure pursuant to the statutes herein challenge as illegal , namely California Civil Code §§ 2924-2924i. and now assigned for FHLMC as trustee for FREDDIE MAC are and at all times herein mentioned was, a California Corporation with it principal place of business in County San Diego County, State of California locate at 411 Ivy Street, San Diego, CA 92101.

16.    Plaintiffs upon information and belief MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) is doing business in the County of Los Angeles, State of California. Plaintiffs are informed and believes, and thereon allege that MERS was acting in the Capacity of electronic agent as a purported Nominee/Beneficiary for COUNTRYWIDE HOME LOANS, INC., under the Deed, subsequently acting in a capacity of bailor/bailee for each successor defendants of bankruptcy remote Special Purpose Vehicle FREDDIE MAC SERIES 3366 TRUST.

17.    "All Person known or Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiff's Title or Any Cloud on Plaintiffs' Title Thereto" are sued herein pursuant to California Code Procedure Section 762.020(a).

18.    Plaintiffs upon information and belief QLS as "Debt Collector", California Domestic Corporation, (hereinafter Defendants), have conspired and acted both in concert and individually to maliciously and fraudulently, proceed against plaintiffs' real property, causing a Notice of Trustee Sale and a Notice of Trustee Sale Under Deed of Trust is and at all times, therein mentioned was, in January 19, 2021, Defendants QLS as "Debt Collector" acting as trustee or as agent for the Beneficiary, by "ADRIANA BANUELOS as assistant VP" February 18, 2021, Substitution of Trustee for FHLMC as trustee for "FREDDIE MAC" to be recorded on Plaintiff's property without being the real property of interest and illegal standing to conduct their subsequent alleged auctions occur.

19.    Plaintiffs ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 100, inclusive, and therefore, sue these defendants by such

fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

20.    Plaintiffs are informed and believe and based on such information and belief aver that Defendants, FHLMC as trustee for "FREDDIE MAC", BRITNEY FISHER as "attorney in fact", MR. COOPER and QLS as "Debt Collector", ADRIANA BANUELOS as "Ass. VP", Attorney MATTHEW E. PODMENIK, Esq. (SBN 219364), MELISSA ROBBINS COUTTS Esq. (SBN 246723), DEBORAH A. BOYD, Esq. (SBN 136296), MCCARTHY & HOLTHUS, LLP (Law Firm), and DOES Defendants 1 through 100, inclusive, and each of them, are and at all times material times have been, the agents service or employment in performing the acts and omitting to act as averred herein. FHLMC as trustee for "FREDDIE MAC", MR. COOPER AND QLS as "Debt Collector", Attorney MATTHEW E. PODMENIK, Esq. (SBN 219364) MELISSA ROBBINS COUTTS Esq. (SBN 246723), DEBORAH A. BOYD, Esq. (SBN 136296), MCCARTHY & HOLTHUS, LLP (Law Firm), and DOES Defendants 1 through 100, inclusive, are hereinafter collectively referred.

21.    Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of each of the other Defendants, and severally liable for the claims set forth herein, except as otherwise alleged.

22.    Defendants sued herein as DOES 1 through 100 are contractually, strictly, Negligently, intentionally, vicariously liable and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this Complaint, and that each of said factiously named Defendants is indebted to Plaintiffs as hereinafter alleged. The use of the term "Defendants" in any of the allegations in this Complaint, unless specifically otherwise set forth, is intended to include, and charge both jointly and severely, not only named Defendants, but all Defendants designated as well.

23.    Plaintiffs are informed and believe and thereon alleges that, at all times mentioned. Herein, Defendants were agents, servants, employees, alter egos, superiors, successors in interest, joint venture and/or co-conspirators of each of their co-defendants and in doing the things herein after mentioned, or acting within the

course and scope of their authority of such agents, servants, employees, alter egos, superiors, successors in interest, joint venture and/or co-conspirators wit permission and consent of their co-defendants and, consequently, each Defendants named herein, and those Defendants named herein as DOES 1 through 100, inclusive, are jointly and severally liable to Plaintiffs for the damages and harm sustained as a result of their wrongful conduct.

24.    Defendants, and each of them, aided and abetted, encouraged, and rendered Substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein.  In taking actions, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goal, and wrongdoing.

25.    Defendants, and each of them, knowingly and willfully conspired, engaged in a Common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein.  The purpose of and effect of the conspiracy, common enterprise, and common course of conduct complained of was, inter alia, to financially benefit Defendants at the expense of Plaintiffs by engaging in fraudulent activities. Defendants accomplished their conspiracy, common enterprise, and common course of conduct by misrepresentation and concealing material information regarding the servicing of Loans, and by taking steps and making statements in furtherance of their wrongdoing as specific herein.  Each Defendants were a direct necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein and was aware of its overall contribution to and furtherance thereof.  Defendants' have committed in furtherance of the wrongful conduct of complained herein.

26.    Any applicable statutes of limitations have been told by the Defendants continuing, knowing, and active concealing of the facts alleged herein.  Despite exercising reasonable diligence, Plaintiffs could not have discovered, did not discover and was prevented from discovering, the wrongdoing complained of herein.

**27**.    In the alternative, Defendants should be estopped from relying on any statutes of
Limitations.  Defendants have been under a continuing duly to disclose the true
character, nature and quality of their financial services and debt collection practices.
Defendants owed Plaintiffs an affirmative duty of full and fair disclosure, but knowingly
failed to honor and discharge such duty.

**28**.    Plaintiffs are informed and believes and thereon alleges that Defendants have
filed Claims against the subject property, and/or estate which Plaintiffs disputes and
therefore, files this Complaint.

**29**.    Plaintiffs alleges that Defendants and each of them, cannot show proper receipt,
Possession, transfer, negotiations, assignment and ownership of **Brendem Plong &
Mareine M. Plong, Original Promissory Note Allonge together with Deed of Trust,
resulting in imperfect security interest and Claims.**

**30**.    Plaintiffs are informed and believes and thereon alleges that Defendants have
filed Claims against the subject property, and/or estates which Plaintiffs disputes and
therefore, files this Complaint.

**31**.    Plaintiffs also asserts Claims against the Defendants and therefore files this
Complaint.

### GENERAL ALLEGATIONS

**32**.    The general rule in appraising the sufficiency of a complaint for failure to state a
claim is that a complaint should not be dismissed '***unless it appears beyond doubt
that the Plaintiffs can prove no set of facts in support of our claim which would entitle us
to relief. 'CONLEY VS. GIBSON (1957), 355 U.S. 41, 45, 46, 78 S. Ct. 99, 102, 2Led 2d
80; SEYMOUR VS. UNION NEWS COMPANY, 7 Cir., 1954, 217 F.2d 168; and see rule
54c, demand for judgment, FEDERAL RULES OF CIVIL PROCEDURE, 28 USCA:
'***every final judgment shall grant the relief to which the party in whose favor it is
rendered is entitled, even if the party has not demanded such relief in our pleadings."
U.S. V. WHITE COUNTY BRIDGE COMMISSION (1960), 2 Fr Serv 2d 107, 275, F2d
529, 535.

**33**.    The court declare that no true "complaint" can be dismissed if that complaint is
supported by a valid "CLAIM" (to equitable or legal right?).  the elements required to

create a valid claim and proof of TITLE and ensure that each of those elements is present in each of the plaintiff's claims.

Plaintiff's petition and/or claim should be expressly written for the purpose of seeking "SUBSTANDTIAL JUSTICE" (whatever that is) as compared to whatever alternative forms of "justice" might exist. We suspect that "substantial" justice may be AT LAW while the alternatives may be in equity—but this requires research.

**34.** Plaintiff's complaint (not claim) must show grounds for the federal court's jurisdiction. This requirement (referenced in A.D. 1950) might or might not have imposed relative to Article III courts. As a precaution, perhaps every CLAIM should also include proof of the federal court's JURISDICTION. If the jurisdiction, is in the claim, then the jurisdiction is surely in the complaint....

**35.** A complaint will not be dismissed for failure to state of a claim, even though inartistically drawn and lacking in allegations of essential facts, it cannot be said that under no circumstances will the party be able to recover." JOHN EDWARD CROCKARD VS. PUBLISHERS, SATURDAY EVENING POST MAGAZINE OF PHILDELPHIA, PA (1956) Fr Serv 29, 18 F.R.D. 511, DCED Pa 19 (1958).

**36.** The reference to "essential facts" is ambiguous in that it might refer to facts "essential" to the "claim" or it might refer to facts "essential" to the facts" concerns those "essential" to the claim rather than the complaint.

**37.** Therefore, a "lack of allegations of essential facts" in a "claim" is insufficient to cause a 12(b)(6) dismissal a plaintiff's complaint, then the issue of "facts" essential to the validity of the claim is not central to 12(b)(6). That tells us that a claim sufficient to ensure a complaint will be heard must be based on the relevant LAW rather than the FACTS.

**38.** A valid claim must include reference to the valid LAW which entitles the plaintiff to seek "relief". Is that "LAW" the USC, common law, State or Federal ORGANIC law, or private law under some private fiduciary relationship between plaintiff and defendant?

**39.** the valid claim must be based on ad expressly reference (and perhaps even prove) some LAW which can be proven by one or more sets of facts. This suggests that a valid claim should include certified copies of the relevant law under which the claim is made.

**40.**.    On or about August 6, 2007, Plaintiffs entered into a consumer loan transaction with COUNTRYWIDE HOME LOANS, INC. (the alleged "Loan") to finance that residential property that is commonly known as 1720 W. Imperial Ave, Lancaster, CA 93534. (the "Subject Property").  Plaintiffs executed a Promissory Note ("Note") as part of the alleged Loan transaction.  Additionally, based upon information and belief, in connection with alleged Loan transaction, COUNTRYWIDE HOME LOANS, INC., took a security interest in the Subject Property in the form of a Deed of Trust recorded with the Los Angeles County's Recorder's Office on or about August 16, 2007, instrument # **20071921645** ("DOT").  A true and correct copy of the DOT is attached hereto as **Exhibit "A"** and incorporated herein by reference.

**41**.    On or about May 1, 2009, the COUNTRYWIDE HOME LOANS, INC.  hereby assigns, and transfers to the BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP.  Plaintiffs are also informed and believes, and thereon alleges that at all times herein mentioned and any assignments of a Deed of Trust without proper transfer of the alleged obligation that it secures is a legal nullity. There are no assignments transfer form COUNRYWIDE HOME LOANS, INC. to BANK OF AMERICA, N.A. through in period of times.  The Deed of Trust to recording in the County Recorder's Office, although the beneficiary interest (ownership) of the Plaintiffs Deed of Trust has been recorded in the Official Recorders of Los Angeles County as being in the name of COUNTRYWIDE HOME LOANS, INC. for the alleged Loan on August 16, 2007, instrument # **20071921645** However, it is clearly alleged that COUNTRYWIDE HOME LOANS, INC. as recorded as the alleged Original Lender on the Plaintiffs Deed of Trust sold all Ownership interest, in the Plaintiffs Intangible Obligations to the BANK OF AMERICIA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP.  Thereafter Brendem Plong & Mareine M. Plong signed the Deed of Trust recorded on them property, the un-recorded Void Corporate Assignment of the Deed of Trust from COUNTRYWIDE HOME LOANS, INC. is attached and incorporated by this reference as Exhibit "A".

**42**.    On or about May 17, 2012, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), **Janet Gordon** "agent of MERS", purported to assign all beneficial interest under the Deed of Trust to the BANK OF AMERICA, N.A. Successor

by Merger to BAC Home Loans, Servicing, LP, fka COUNTRYWIDE HOME LOANS,
SERVICING, LP, under a Void Assignment of the Deed of Trust recorded on our
property, in the County Recorder's Office of Los Angeles County California instrument #
**20120741476** attached and incorporated by this reference as "**Exhibit "B"**", the
Assignment by MERS was Improper because MERS never had a beneficiary interest in
the Subject Property and was merely a "nominee" under the Deed of Trust.  In the
assignment of the Deed of Trust from MERS to BANK OF AMERICA, N.A. the
assignment says' **FOR VALVE RECEIVE** that mean that MERS received as nominee
and beneficiary full value of $ 374,550.00 for the Deed of Trust and promissory note that
was signed over to **BANK OF AMERICA, N.A. here there is a break in the chain of
title that cannot be re-engineered.**

**43**.    On or about October 23, 2012, a Corporation Assignment of Deed of Trust to
NATIONSTAR MORTGAGE LLC signed by Valerie White as Assistant Vice President
for BANK OF AMERICA, N.A. does hereby grant assigns, and transfer to NATIONSTAR
MORTGAGE LLC 350 Highland Drive, Lewisville, TX 75067. Under a Void Assignment
to the Deed of Trust on our Property, Cause to be recorded, in the County Recorders'
Office in Los Angeles County California instrument # **20121606089** attached and
incorporated by this reference as "**Exhibit "C"**.  **This assignment is 6 years past the
Cut-off date of the Pooling and Servicing Agreements** (also known herein as the
"PSA") and Prospectus requirements of this alleged Trust.  Fraudulent attached to the
estate. This trust is attached to Pooling and Servicing Agreements, "Prospectus
Supplement" and as such required by PSA and NEW YORK TRUST LAW, to be
assigned to the said trust with a 90-days window.  Final Origination, Cut-Off date of
November 6, 2007.  The use of the date of autographing the alleged "Deed of Trust" is
not the date it originated, the recordation date is the date of funding and the date the of
November 6, 2007, is an impossibility as to exist in any trust at Cut-Off date the
Origination would have had to be completed and funding done.  In the Trust PSA and
Prospectus all facts remain that that the Assignments **CANNOT BE CREATED 6
YEARS AFTER THE REQUIRE TIME: FRAME.**  The closing date of the trust is also the
start-up date.

**44**.    FHLMC as trustee for "FREDDIE MAC" and MR. COOPER (SERVICER) is the alleged trustee, or indenture trustee, for the trust corresponding to a Void Assignment of Deed of Trust, residential mortgage-backed securitization fails when not assigned in the demanded time: frame under NEW YORK TRUST LAW.  The use of this Trust name is a BREACH OF CONTRACT and a VOID of CONTRACT.  SUBJECT PROPERTY did not close escrow until August 16, 2007, as such there is no authority or standing for this TRUST.  The threats of foreclosure and retaliation by DEBT COLLECTORS prior to the VOID Assignment done on **December 24, 2018, are all done with unclean hands and other known, unknown criminal actions**.  Numerous NOD's and NOTS were threatened and rescinded prior to the VOID Assignment.  These documents all created damages due to the attempt to foreclose without created and as VOID CONTRACT NO STANDING EXISTED, EVIDENCED BY THE BANK.

**45**.    "THE ESSENCE OF A TRUST IS NOT THE TRUST DOCUMENT.  THE ESSENCE IS THE EXISTENCE OF TRUST PROPERTY."  Like legal standing, there must be some THING that is involved, or the court had no jurisdiction.  If you look up any source on the definition or elements of legal trust, **there is no "Trust" if no THING (property) has been conveyed to the intended Trustee to hold in "Trust"** Without a THING, property in the Trust instrument is both nonexistent and irrelevant and does not create a legal "person" in any court in any state.  Trust of all types do not exist unless and until property is entrusted to the trustee.

**46**.    It is well established law that the assignments of the Original Deed of Trust do not Assign the underlying promissory note and right to be paid, and that the security interest in incident of the debt.  **With Summary of California Law, Secured Transactions in Real Property § 105 (10th ed). Under California Law, to perfect the transfer of Mortgage paper as collateral the owner should physically deliver the Original Note to the Transferee, Bear v. Golden Pan of California, Inc. 829 F. 2d 705m 709 (9th Cir. 1986).  Without physical transfer, the Sale of the Original Promissory Note could be invalid as a fraudulent conveyance Cal. Civ. Code § 3440, or as unperfected, Cal. Com. Code §§ 9313-9314. See Roger Bernhardt, California Mortgages and Deed of Trust, and Foreclosure Litigation § 1.26 (4th ed. 2009).**

47.    on or about November 02, 2021, a Notice of Trustee Sale Defendants FHLMC as
trustee for "FREDDIE MAC" and MR. COOPER, BRITNEY FISHER (Attorney in fact)
Cause to be recording to County Recorder's Office their name of QLS Debt Collector for
FHLMC as trustee for "FREDDIE MAC" and MR. COOPER it signed by BRITNEY
FISHER "attorney in fact" – Document Execution Associate under the deed of trust in
the County Recorder's Office in Los Angeles, County California, instrument #
**20211639708 and 12/27/2021, a Notice of Trustee's Deed Upon Sale instrument #
20211908685** attached and incorporated by this reference as **"Exhibit "D".** plaintiffs
alleged that MR. COOPER (SERVICER) is the servicing company on the alleged Loan
and did not have a written agreement to act as "SERVICER" for FHLMC as trustee for
"FREDDIE MAC" **in addition, MR. COOPER (SERVICER)** who was acting as the agent
of the principal failed to have written authorization to act for the principal and under Cal.
Civ. Code See §1624 the agency relationship must also be in written form **15 USC
Chapter 41§ 1641(f)** Treatment of Servicer:

(1)    *In general, a Servicer of a consumer obligation arising from a consumer
Credit transaction [shall not] be treated as an assignee of such obligation
For purposes of this Section unless the servicer is or was the owner of
Obligations.*

(2)    *Servicer not treated as owner on basis of assignment for administrative
Convenience.  A servicer of a consumer obligation arising from a
Consumer credit transaction [shall not] be treated as the owner of the
Obligation for purpose of this section on the basis of an assignment of the
Obligation from the creditor or another assignee to the servicer solely for
The administrative convenience of the servicer in servicing the obligation.
Upon written request by the obligor, the servicer shall provide the obligor,
To the best of knowledge of the obligation or the Master servicer of the
Obligation a Deed of Trust [never] contains a "legal obligation to pay
Money" and has no separate value apart from the Note is secure, so it
Cannot be [sold for value] apart from the intangible Obligation and
Tangible Note, which have already been sold and/or destroyed (as
Described above).*

48.    On or about January 10, 2019, FHLMC as trustee for "FREDDIE MAC" and MR.
COOPER (SERVICER) Cause to be recorded a Notice of Default and election to Sell
under the deed of trust on Plaintiffs Property instrument # **20190028472** attached and

incorporated by this reference as (**Exhibit "E"**).  However, Plaintiffs were not familiar with entities set forth therein.  Specifically, the Notice of Default stated that the Deed of Trust executed by Defendants "was to secure obligations in favor of the beneficiary Mortgage Electronic Systems Inc. ['MERS'], as Beneficiary, "not FHLMC as trustee for "FREDDIE MAC".  MERS was never a beneficiary of Plaintiff's alleged Loan.  Additionally, MERS was never entitled to receive payment from Plaintiff pursuant to the Note although they did receive for value as stated in the assignments above and MERS is an outright sham, they are not licensed to do business as a mortgage company in any state.  Thus, MERS did not have legal standing or any legal right to assign all beneficiary interests under the Deed of Trust.

**49.**    The Notice of Default was wrongfully recorded by NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER, it signed by agent or Employee **CHANC DAVIS** – Document Execution Associate the execution date on **01/07/2019**. As the Notice was wrongful and improper because QLS "Debt Collector" did not have the legal right to act as trustee under the Deed of Trust.  Specifically, the Substitution of Trustee which allegedly substituted QLS "Debt Collector" in as trustee was executed on **January 19, 2021,** FHLMC as trustee for "FREDDIE MAC" and MR. COOPER (SERIVER), According to the final Corporation Assignment of the Deed of Trust dated **December 17, 2018**, the alleged Beneficiary are FHLMC as trustee for "FREDDIE MAC" and MR. COOPER (SERVICER).  Also, there is no documents recorded at the Los Angeles County Recorder's Office establishing any relationship between FHLMC as trustee for "FREDDIE MAC".  ***OATHS UNDER PENALTY OF PERJURY: The California Declaration of Compliance attached to the Notice of Default is not signed under penalty of perjury.*** *Cal. Civ. Code § 2015.5* whenever, under any law of this state or under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the ***sworn statements, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same (Other than a deposition, or an oath of office***.  Or an oath required to be taken before a pacified official other than a Notary Public).  Such matter our with like force and effect be **supported, evidenced, established or proved by the sworn statement, declaration, verification or**

certificate, in writing of such person who recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her and

    (1)    if executed within this state, states the date and place of execution.  Or

    (2)    if executed at any place, within or without this state, states the date of Execution and that it is so certified or declared under the laws of the State Of California.  The Certificate or declaration may be in substantially the Following fond

        (a) If executed within this state: "¹certify or declare) under penalty of perjury that the foregoing is true and correct". (Date and Place) (Signature)

        (b) If executed at any place, within or without this state. "I certify or Declare) Under Penalty of perjury under the laws of the state of California that the Foregoing is true and correct". (Date) (Signature)

**50**.    Thus, QLS "Debt Collector" was not the dully appointed Trustee under the Deed of Trust when it executed the Notice of Default on January 8, 2019.  Moreover, the NOD is also wrongful and void because it was executed by QLS "Debt Collector" as "agent for the Beneficiary." QLS "Debt Collector" had no legal basis to execute the NOD as it was not the trustee on the DOT and had not been substituted in as trustee by the alleged beneficiary FHLMC as trustee for "FREDDIE MAC", as they QLS "Debt Collector" as were substituted by FHLMC as trustee for FREDDIE MAC and MR. COOPER (SERVICER), it signed by BRITNEY FISHER attorney in fact.  Again, there is no document recorded at the Los Angeles County Recorder's Office establishing an Acting as Substitute trustee for the beneficiary relationship between MR. COOPER (SERVICER) and FHLMC as trustee for "FREDDIE MAC".  Therefore, the NOD is VOID ab initio.  Also, the recorded NOTICE OF DEFAULT and ELECTION TO SELL UNDER DEED OF TRUST (NOD) dated **January 8, 2019**, is [invalid] as it [defective] claim QLS "Debt Collector" as the duly appointed or substituted trustee and agent for the trustee, to be the agent of the beneficiary of the Deed of Trust.  However, the Original Trustee named the deed of trust is **RECONTRUST COMPANY, N.A.** and the original trustee was not substituted by the beneficiary of record or the alleged original Lender

COUNTRYWIDE HOME LOANS, INC. only the Beneficiary can substitute a trustee under *California Civil Code Section 2934a(a)(1),* and such document must be recorded:

**51.**    on or about April 4, 2019, FHLMC as trustee for "FREDDIE MAC" and MR. COOPER (SERVICER) Cause to be recorded a NOTICE OF TRUSTEE SALE under the deed of trust on Plaintiffs Property instrument # **20190293573** and May 9, 2019, Second Notice of Trustee Sale instrument # **20190423555** attached and incorporated by this reference as (**Exhibit "F"**). a copy of Urgent – Notice of Violation Notice to Cease and Desist Trustee Sale to Mr. Cooper c/o by Bray Jay, President, Amar Patel CFO, Anthony L. Ebers, CEO. "See Attachment".

**52.**    Based upon information and belief, there was no assignment of the Note with the Deed of Trust, none of the Foreclosing Defendants are the Holder of the Note in Due Course, and none of the Foreclosing Defendants were assigned the Note by COUNTRYWIDE HOME LOAN, INC. Accordingly, none of the foreclosing Defendants were ever entitled to enforce the Note.

**53.**    Based upon the information and belief, there was no assignment and Notwithstanding of the fact that it was not the trustee under the Deed of Trust, and it did not have any authority from the beneficiary under the Deed of Trust, QLS "Debt Collector" allegedly acting as the duly appointed Trustee under Deed of Trust. The trustee's sale which was executed and recorded by QLS "Debt Collector". States that FHLMC as trustee for "FREDDIE MAC" and MR. COOPER (SERVICER) was the foreclosing beneficiary. The Trustee's Sale was also invalid and Void because it was based on an invalid and void assignment of the Deed of Trust.

**54.**    Based upon information and belief, the ***Trustee's Sale was also invalid because it Took Place without anyone ever presenting the Original Note, or Original and valid assignments of the Note, to QLS "Debt Collector"*** the failure to do so resulted in an invalid foreclosure sale.

**55.**    Based upon information and belief, at no time did QLS "Debt Collector" know, in fact, who the actual beneficiary of the Deed of Trust was. Further, Plaintiffs are informed and belief that the actual beneficiary of the Deed of Trust NEVER provided a declaration to QLS "Debt Collector", stating that Plaintiffs were in default under the terms of the Deed of Trust and, accordingly, the recording of the Notice of Default and

any subsequent documents relating to a non-judicial foreclosure were recorded in *violation of California Civil Code Section 2924(a)(1)(c).*

**56**.     Plaintiffs further allege on information and belief that none of these alleged ***Beneficiary or representatives of the Beneficiary have the Original Note to Prove that they are in fact the true party of interest under California Civil Code 367 authorized to conduct the foreclosure sale on the subject property.***

**57**.     Based upon information and belief, there was no assignment of the Note with the Deed of Trust, none of the Foreclosing Defendants are the Holder of the Note in Due Course, and none of the Foreclosing Defendants were assigned the Note by, COUNTRYWIDE HOME LOANS, INC.  According, none of the Foreclosing Defendants were ever entitled to enforce the Note.

**58**.     On or about November 02, 2021, Plaintiffs received a copy of a NOTICE OF TRUSTEE SALE which was Plaintiff's Notice that the Foreclosing Defendants QLS "Debt Collector" foreclosed on the Subject Property.  From the Notice of Trustee Sale and any subsequent documents relating to a non-judicial foreclosure was recorded in violation of *California Civil Code Section 2924(a)(1)(c)....*

**59**.     Plaintiffs further alleges on information and belief that none of these alleged Beneficiary or representatives of the Beneficiary have the Original Note to Prove that they are in fact the party authorized to conduct the foreclosure sale on the property under a deed of trust.

**60**.     Plaintiffs further alleges that the foreclosure sale of the Subject Property was not Executed in accordance with requirements of *California Civil Code Section1624, 2924 et seq.*

**61**.     That the Trustee who was acting as the agent of the principal failed to have written Authorization to act for the principal and under *Cal. Civ. Code Sec. 1624* the agency relationship must also be in written form.

**62**.     That the Notices and Foreclosure failed to conform with the provisions of *California Civil Code Section 1624, and Commercial Code Section 3302 et seq.*

**63**.     Plaintiffs alleges that the Loan Servicer and the trustee are acting as agents of the Beneficiary and signing documents as the agent of the agent of the agent of the

Beneficiary for Plaintiff's Deed of Trust because there is NO Note attached to the
Assignments and the Notice therein.

**64**.     Plaintiffs alleges that by Virtue of the method and manner of Defendants Carrying
Out *Civil Code Section 2924*, Defendants proceeding with the foreclosure of the Subject
Property acted in violation of said statute.

**65**.     Furthermore, to put them on Notice that Plaintiffs are concerned about them
Deed of Trust and Promissory Note and believe there may have been or may be some
discrepancies or violation in the origination, closing, terms securitization of or servicing
of their alleged home loan.  The Plaintiffs responded to a debt collection letter from MR.
COOPER (SERVICER) in an attempt to collect a debt.  Plaintiffs responded with a
validation of debt and proof of claim.  once in receipt of the aforementioned Qualified
Written Request, NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER (SERVICER)
had an affirmative duty to give notice to, inter alia, FHLMC as trustee for "FREDDIE
MAC", Defendants, MR. COOPER (SERVICER) and FHLMC as trustee for "FREDDIE
MAC" failed to answer our request the Qualified Written Request, Truth-In-Lending Act
point for point and violation of the Real Estate Settlement Procedure Act, *12 U.S.C.
Section 2607,* said defendants have failed to respond to said Notice by Plaintiffs and
have substantially failed to respond to all other communications and inquiries by
plaintiffs.

**66**.     **The power of Sale may be exercised by the assignee if the assignment is
duly acknowledged and recorded.**  The Note here specifically identified the party to
whom it was payable, COUNTRYWIDE HOME LOANS, INC., and the Note therefore
cannot be transferred unless the Note is endorsed. *See Cal. Com. Code §§ 3109,
3201, 3204,* the assignments do establish that COUNTRYWIDE HOME LOANS, INC.
endorsed and sold the Note to BANK OF AMERICA, N.A. on an unrecorded
CORPORATION ASSIGNMENT of the Deed of Trust and "**MERS**" acted only as
nominee for COUNTRYWIDE HOMA LOAN, INC. under the Deed of Trust.

**67**.     Plaintiffs further alleges Since no Evidence has been offered that the Promissory
Note has been transferred, ("MERS') could only transfer whatever interest it had in the
Deed of Trust.  However, the Promissory Note and the Deed of Trust are inseparable.
The Note and the Mortgage are inseparable:  The former as essential, the later as an

incident.  An assignment of the carries the mortgage with it, while an assignment of the latter alone is a nullity.  *"Carpenter v. Logan, 83 U.S. 271, 274 (1872): accord Henley v. Hoteling, 41 Cal. 22,28 91871); Seidels v. Tuxedo Land Co. 216 Cal. 165, 170 91932; Cal. Civ. Code § 2936) (**Wisconsin Appeals Court Aurora v. Carlsen**).*

**68**.    Therefore, if one party receives the Note an another receives the Deed of trust, the Holder of the Note prevails regardless of the Order in which the interest was transferred.  *Adler v. Sargent, 109 Cal. 42, 79-50 (1895).*  Further, several courts have acknowledged that ("MERS") is not the owner of the underlying note and therefore, could not transfer the Note, the beneficial interest in the deed of trust, or foreclose upon the property secured be the deed.  Here there is a break in the Chain of Title which cause bifurcation, once bifurcation occurs, then the security has been broken because State Law has been violated.

**69**.    FHLMC as trustee for "FREDDIE MAC", an asset-back certificate, that the asset-backed certificate was not part of the Original Agreements, was not mentioned in the Original Agreements, and we cannot construe such certificate that has never been brought to the attention of the alleged borrower as being part of the agreements.  The alleged borrower disavows any knowledge of any ASSET-BACKED TRUST 2017, and only became aware of such certificate on or about **December 24, 2018**.

**70**.    Plaintiffs alleges the beneficiary interest (ownership) of the Deed of Trust has been Recorded in the Official Records of Los Angeles County as being in the name of COUNTRYWIDE HOME LOAN, INC. for the alleged loan on August 6, 2007.  However, it is Clearly alleged by FHLMC as trustee for "FREDDIE MAC", that COUNTRYWIDE HOME LOANS, INC. on or **about May 1, 2009**, sold all ownership interest, in the Intangible Obligations to the BANK OF AMERICA, N.A. BAC HOME LOANS SERVICING, LP.  **After 2 years 9 months Signing the Deed of Trust.**  Those assignment transfers had not been recorded in the Los Angeles County Recorder's within 90 days along with notification to Brendem Plong & Mareine M. Plong transfer had occurred.

**71**.    Plaintiffs further alleges THE REMIC TRUST OF FHLMC are Required to have interest in the Note and interest in the Deed of Trust.  Document Custodians are responsible for verifying certain information contained in the Note and related

documents for the Mortgage sold to THE REMIC TRUST OF FHLMC, and for certifying that they have performed those verifications and that to original documents are in their possession. "By alleging THE REMIC TRUST OF FHLMC was exercising alleged rights of ownership Over the alleged mortgage loan and the payment streams.  By alleging to exercise rights of ownership over the alleged mortgage loan multiple classes of the trust made a claim of rights to all three parts of the alleged Mortgage Loan.

**72**.    Plaintiff further alleges the alleged Mortgage Loan only exists through the Tangible sale of the Intangible Obligations to THE REMIC TRUST OF FHLMC, without stripping away the rights to the Intangible Obligations from the rights to the Note could only be accomplished with accompanying negotiation of the Note a of and an accompanying assignment of the deed of trust.  THE REMIC TRUST OF FHLMC alleges ownership of the Intangible Obligations and exercises that Claim to exercise the claim of rights to the Tangible Obligations, an assignment of the Deed of Trust should have been accomplished when in fact they have not.

**73**.    THE REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC", alleges ownership of the Intangible Obligations.  However, the transfer of rights to either of the two tangible parts of the security instrument that evidence the Intangible Obligation from COUNTRYWIDE HOME LOANS, INC. is not memorialized in the Los Angeles County Record.  The Supreme Court did not connote magical powers onto a security instrument (piece of paper), of which can ONLY transfer by written to enable the resurrection of the lifeless appendage.  A security lost is just that?  The California Commercial Statutes (UCC in each state) are clearly the [essential] statutes concerning mortgages-loan because they govern the "Person Entitled to Enforce" the Note (PETE), whether it's negotiable or otherwise, whereas the Non-Judicial-Foreclosure-Statutes are mere incidental[s] to the California Commercial Statutes.

**74**.    Non-Judicial Foreclosure Statutes are NOT necessary to foreclose in California. Secured creditors can always [elect] to foreclose by [judicial] means and sue the [Alleged Borrower] based on the obligation.  Judicial [alternative] is an available for the alleged Creditor therefore, making the Non-Judicial Foreclosure Statutes [incidental] to the [essential] Commercial Statutes which govern the enforcement rights of the obligation.  Therefore, assignment of Deed of Trust is [first] controlled by the California

Commercial Statutes (UCC, and then the State's recording and Non-Judicial Foreclosure Statutes thereafter.

**75.**    The [operative Language] in every "Assignment of Deed of Trust" is the Following: [**FOR VALUE RECEIVED**] … this assignment is made conveying, granting or gifting… Therefore, the obligation controls, and… "Holder-In-Due-Course" status strictly relies upon [full value] being paid even for bearer paper as well as the Note [not] being in default.  Regardless of whether the Note [could've] been enforced by a thief… equity will not allow a thief to foreclose non-Judicial.  Therefore, the [owner] of the Note (**Original Evidence of Debt**) must actually be the "owner-In-Due-Course" and can prove both the transaction was an[intended] action from a prior (**OIDC**) and that the present (**OIDC**) paid full value for the instrument and that the instrument was not in prior dishonor or default when acquired (*UCC § 3-309*).  The "Of-Record-Title" is [supposed] to give constructive-*Cal. Gov. Code § 27288.1)* whether it's a public or Private REMIC-TRUST (*IRC-890(D))* or a flesh-and-blood person (*CCP § 2932.5*).

**76.**    Under the strict Internal Revenue Code (IRC), THE REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC", [shall] perfect its Title and authority to foreclose by Becoming the tax-able-owner-of-record within [90 days] of the startup date of THE REMIC-TRUST (IRC 860(D)) which was in 2007.  THE REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC", failed to become a "Beneficiary of Record."  Further, under the Consumer Credit Protection Act Titled 15 USC Chapter 41 § 1641(g) the new creditor Must Notify the Obligor of the sale and transfer and disclose the location where the assignment is duly recorded within [30 days] of the transfer or it is a Federal Violation.  Under the Consumer Credit Protection Act Title 15 USC Chapter 41 § 1641(g) any transfer of the transfer of the alleged Mortgage Loan THE REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC", would be in violation of Federal Statue, if those transfer had not been recorded in the [Los Angeles County] recorded within [90 days] along with notification to Brendem Plong & Mareine M. Plong transfers had occurred.

**77.**    Plaintiffs further alleges that Defendants, and each of them, cannot establish Possession and proper transfer and/or endorsement of the Promissory Note and proper assignments of the Deed of Trust herein.  Therefore, none of the Defendants have

perfected an claim of title or security interest in the property. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or note, were legally or property acquired.

**78**.    Plaintiff alleges that an actual controversy has arisen and now exists between the Plaintiffs and Defendants, and each of them.  Plaintiffs desires a Judicial Determination and declaratory of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

**79**.    Plaintiffs also seeks redress from Defendants identified herein below for damages for other injunctive relief, and or cancellation of written instruments based upon.

      a.    An invalid and unperfected security interest in Plaintiffs Home hereinafter described.

      b.    Void "True Sale(s)" violating CALIFORNIA Law and express terms of the Pooling and Servicing Agreement ("PSA') governing the securitization of Plaintiff's mortgage, which is a Trust Agreement required to be filed under Penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the **Mortgage Loan Purchase Agreement** ("MLPA"), is the operative Securitization document created by the finance and securitization Industry to memorialize securitization transactions (see further discussion Of the PSA herein);

      c.    An incomplete and ineffectual perfection of a security interest in Plaintiff's Home; A void or voidable Deed of Trust due to improper securitization by THE REMIC TRUST OF FHMLC as trustee for "FREDDIE MAC", for Which there is a reasonable apprehension that, if left outstanding, may Cause a serious injury.

## STATEMENT OF PERTINENT FACTS

**80**.    Plaintiffs had a Forensic Chain of Title Securitization Analysis Completed by qualified expert in to verify the claims of this complaint.  (**Exhibit "G"**) Affidavit of Arthur A. Bennardo.

**81.**   Plaintiffs executed a series of documents, including but not limited to a Note and Deed of Trust, allegedly securing the Property in the amount of note.  The Beneficiary and nominee under the Deed of Trust was Mortgage Electronic Registration Systems, Inc. aka "MERS" and the entity's powers, rights, and privileges have been suspended since 2000 and remain suspended at the time of the 2nd assignment of the Deed of Trust to BANK OF AMERICA, N.A. on May 10, 2012, Signed by **Janet Gordon**, "assistant Secretary of "MERS".

**82.**   An Expert, Certified Forensic Auditor of the Plaintiffs Loan Documents revealed the following legal violations, which were incurred during the handling and Processing of Plaintiff's Loans.

**83.**   Plaintiffs are informed and believes, and thereon alleges, if this loan was Securitized, with the Note not being properly transferred to Defendants, THE REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC" set forth herein above, the Securitized Trust was formed by execution of the PSA.

**84.**   Plaintiffs informed and believes, and thereon alleges, that the purchase Mortgage on the property, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiffs in favor of the Original Lender and other Defendants, Regarding the Property, was not properly assigned and transferred to Defendants Operating the pooled mortgage funds or trusts in accordance with the PSA of the Entities making and receiving the purported assignments to this trust.

**85.**   Plaintiffs alleges that PSA requires that each Note or Deed of Trust had to be endorsed and assigned, respectively, to the trust and executed by multiple intervening parties before it reached the Trust.  Here, neither the Note nor the deed of trust was assigned to the Securitized Trusts by the closing date.  Therefore, under the PSA, any assignments of the Deed of Trust beyond the Specified closing date for the Trust are **VOID**.

**86.**   Plaintiffs further allege that even if the Deed of Trust had been transferred into the Trust by the closing date, the transaction is still **VOID** the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a Complete and unbroken chain of transfers and assignments to and from each intervening party.  Documents filed with the SEC by the Securitization participants

allegedly claim that the Note and Deed of Trust at issue in this case were sold, transferred and Securitized by Defendants, with other loans and Mortgages with an aggregate principal balance of approximately **$1,007,425.00 into THE REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC",** which is a Common Law Trust Formed Pursuant to VERNOR HILLS ILLION.  A copy of the Prospectus Supplement can be found at the site indicated below.

**87**.    Plaintiff are informed and believes, and thereon alleges, that THEREMIC TRUST OF FHLMC as trustee for "FREDDIE MAC" had no officers or Directors and no continuing duties other than to hold assets and to issue the series of Certificates of investments as described in the Prospectus identified herein below.  A Detailed description of the mortgage loans which form THE REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC" is included in **form 424B5** ("the Prospectus"), which has been duly Filed with SEC, and which can be accessed through the below mentioned Foot Note. [1]

**88**.    Plaintiffs also alleges that the Note was secured by the Deed of Trust.  Plaintiffs allege that as of the date of the filing of this Complaint, the Deed of Trust been legally assigned to any other party or entity.

**89**.    Plaintiffs are informed and believes, that Defendants FHLMC as trustee for "FREDDIE MAC", alleges that it is the "Holder and Owner" of the Note and the Beneficiary of the Deed of Trust.  However, the Note and Deed of Trust identify the mortgage and note holder as the Original Lending institution or Mortgage ORIGINATOR COUNTRYWIDE HOME LOANS, INC.  documents state that the Original Lender allegedly sold the Mortgage Loan to BANK OF AMERICA, N.A.

---

[1] http://www.sec.gov/Archives/edgar/data/815018/000116231807000567/m0565424b5.htm

**90**.    Plaintiffs further alleges that no documents or records can be produce that demonstrate that prior to the closing date for THE REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC", the Note was duly endorsed, transferred and Delivered to THE REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC", including all intervening transfers.  Nor can any documents or record be produced that Demonstrate

that prior to the closing date, the Deed of Trust was duly assigned, Transferred and delivered to THE REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC", including all intervening assignments.

91.    Plaintiffs further alleges that any documents that purported to transfer any interest in the Note to structure Adjustable-Rate Mortgage Loan Trust, COUNTRYWIDE SUPPLEMENT FUNDING LIQUIDITY POSITION, Calabasas, CA (August 16, 2007) – COUNTRYWIDE FINANCIAL CORPORATION (NYSE: CFC) announced that it has supplemented its funding liquidity position by drawing on credit facility.  In addition, the Company has accelerated it plans to migrate its mortgage production operations into COUNTRYWIDE BANK FSB. Countrywide originates, purchases, securitizes, sells, and services prime and nonprime loans; provides loan closing services such as credit reports, appraisals and flood determinations; offers banking services which include depository and home loan products; conducts fixed income securities underwriting and trading activities; provides property, life and causality insurance; and manages a captive mortgage reinsurance company.  After the Trust closing date are void as matter of law, pursuant to CALIFORNIA trust law and relevant portions of the PSA.  For more information about the company, visit countrywide website at www.countrywide.com

92.    The link to the SEC and the various documents filed with SEC Regarding the Note are SEC website: http://www.sec.gov

93.    Plaintiffs are informed and believes, and thereon alleges, that the Purported assignments and transfers of Plaintiffs alleged debt or obligation did not Comply with NEW YORK LAW, and/or other Laws and statutes, and thus, do not constitute Value and enforceable "True Sale."  Any security interest in the Property was thus, neve perfected.  The alleged holder of the Note is not the beneficiary of the Deed of Trust. The alleged beneficiary of plaintiffs Deed of Trust does not have the requisite Title, perfected security interest or standing to proceed; and/or is not the Real Party in Interest with regard to any action taken or to be against the Property.

94.    Plaintiffs are informed and believes, and thereon alleges that at all times herein mentioned, and any assignments of a Deed of Trust without proper transfer of the alleged obligation that it secures is a legal Nullity.

**95**.    As set forth herein above, Defendants, and each of them, violated the Express terms of the PSA, which is a Trust Agreement and which along with another **Documents, the Mortgage Loan Purchase Agreement,** is the operative securitization Documents created by the finance and securitization industry to memorialize a particular securitization transaction.  The PSA specifies the rights and obligations of each party to the securitization transaction to each other, and is a public document of filed with SEC.  More specifically, the PSA requires strict compliance with its procedures and Timelines in order for the parties to achieve their specific objectives.

**96**.    Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms.  The purpose is to provide a large supply of money to lenders which were expected to be relatively safe.  The procedure for selling of the alleged loans was to create s situation whereby certain TAX LAW known as the REAL ESTATE MORTGAGE INVESTMENT CONDUCT (hereinafter "REMIC") Act were observed and whereby the issuing Entities and the Lenders would be protected from either entity going into bankruptcy.  In order to achieve the desired "bankruptcy remoteness," two "TRUE SALE" of the alleged loans had to occur, in which Loans were sold and transferred to the different parties to the securitization.

**97**.    A "TRUE SALE" of the Loan would be a circumstance whereby one party Owned the Note and then sold it to another party.  An offer would be made, accepted and compensation given to the "SELLER" in return for the Note.  The Notes would be Transferred, and the Deed of Trust assigned to the buyers of the Note, with an assignment made every step of the way, and furthermore, each Note would be Endorsed to the Next party by the previous assignee of record.

**98**.    **In order for the Trustee of the Securitized Trust to have a valid and Enforceable secured claim against Plaintiff's Home, the Trustee must prove and Certify to all parties that, among other things required under the PSA:**

      a.    There was a complete and unbroken chain of endorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust, and that all of these endorsements and transfer

were completed prior to the Trust closing date (see discussion below); and

b.    the Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all endorsements and assignments had Been Completed.  Absent such proof, Plaintiffs allege that the Trust Cannot Demonstrate that it had perfected its security interests in Plaintiffs, Home that is subject of this action.  therefore, if the Defendants, and each Of them, did not hole and possess the Note on or before the closing date Of the Trust herein, they are estopped and precluded from asserting any Secured or unsecured claim in this case.

99.    Plaintiffs are informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the Original Lender herein) agreed to transfer and endorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff's herein and all other mortgage loans Identified in the PSA.

100.    Plaintiffs are further informed and believes, and thereon alleges, that the PSA Provides that the transfer and assignments are absolute, were made for valuable Consideration, to writ, in exchange for the certificates described in the PSA, and were Intended by the parties to be bona fide or "***TRUE SALE." Since, as alleged herein below, True Sale did not actually occur, Plaintiffs alleges that the Defendants Trustee are estopped and precluded from asserting any secured or unsecured claim in this case.***

101.    Plaintiffs are further informed and believes, and thereon alleges, that as a Result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, Sponsor and Depositor[2] are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust on Plaintiffs Home herein.

102.    Plaintiffs are informed and believes, and thereon allege, that the Note in this Case and other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust.  Plaintiffs further alleges, on information and belief, that the PSA herein provides that the Mortgage Files of the

Mortgage were to be delivered to REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC", which **Mortgage File include the Original Deed of Trust**, herein.

**103.**   Based upon the foregoing, Plaintiffs are informed and believes, and thereon allege, that the following deficiencies exist, in the "TRUE SALE" and Securitization process as to this Deed of Trust which render **INVALID** any security interest in the Plaintiff's Mortgage including, but not limited to:

---

[2] *The Originator is the lender who originally funded the loan; the Sponsor "collects" or "buys" the loans from Different lenders, combines them, and then "sells" them to the Depositor; the Depositor "deposits" the loans into The Issuing Entity Trusts, and then, various bonds and certificates are sold; the Issuing Entity would be the "legal owner" of the Notes, though the actual documents would be held by Custodians.*

　　　　a.  The splitting or separation of Title, ownership and interest in Plaintiff's
　　　　　　 Note and Deed of Trust of which the Original Lender is the Holder,
　　　　　　 owner and Beneficiary of Plaintiff's Deed of Trust,

　　　　b.  When the loan was sold to each intervening entity, there were no
　　　　　　 assignments of the Deed of Trust to or from any intervening entity at
　　　　　　 the time of the sale.   therefore, "TRUE SALE" could not and did not
　　　　　　 occur,

　　　　c.  The failure to assign and transfer the beneficiary interest in Plaintiff's
　　　　　　 Deed of Trust to Defendants FHLMC as trustee for "FREDDIE MAC",
　　　　　　 in accordance with PSA of the Defendants, as Securitization
　　　　　　 Participants,

　　　　d.  The failure to endorse, assign and transfer Plaintiff's Note and/or
　　　　　　 mortgage to Defendants FHLMC as trustee for "FREDDIE MAC", in
　　　　　　 accordance with the PSA.

　　　　e.  No Assignments of Beneficiary or Endorsements of the Note to each of
　　　　　　 the Intervening entities in the transaction ever occurred, which is
　　　　　　 conclusive Proof that no TRUE SALE occurred as required under the
　　　　　　 PSA filed with SEC.

COMPLAINT FOR WRONGFUL FORECLOSURE, DECLARATORY RELIEF, ETC.

f.   Defendants, and each of them, violated the pertinent terms of the PSA
Plaintiff's are the Superior Recorded owners of the Prime Market
Property (Exhibit "A") Note.

**104.**   Plaintiffs issued a Promissory Note to facilitate a loan in the amount of
$374,550.00 to COUNTRYWIDE HOME LOANS, INC....

**105.**   Plaintiffs pledged a Constructive Deed of Trust granting Legal Title to
Accommodate COUNTRYWIDE HOME LOANS, INC. to filed against the Plaintiffs'
Superior Claim to Title filed in the Official Records of the Los Angeles Count Recorder's
Office on August 16, 2007, as Instrument # **200719216465** (Exhibit "A") DEED OF
TRUST.

**106.**   The purported Mortgage Loan contract between the parties is specific as to the
duties of each party.

**107.**   On or about December 17, 2018, the Closing Date of the FHMLC as trustee for
"FREDDIE MAC", Plaintiffs' Note was sold of the Trust.

**108.**   There is no contemporaneous assignment of Plaintiffs' Mortgage to the Trust as
underlying Security for Plaintiffs' Note.

**109.**   Plaintiffs' Note and Mortgage are irreparably separate.  Any attempt to assign
assets into the Trust after the Closing Date of the Trust is a violation of the terms of the
Trust and is **VOIDABLE**?

**110.**   On December 24, 2018, an Assignments of Deed of Trust was filed with the Los
Angeles County Recorder's Office as Instrument # **20181300032.**

**111.**   On December 17, 2018, Assignments was executed by **MOHAMED HAMEED**,
"VP" on behalf of NATIONSTAR MORTGAGE LLC without disclosing his true
employment with assignee.

**112.**   The December 24, 2018, assignments purported to assign to the trust all right,
title and interest in plaintiffs' Deed of Trust to the Trust.

**113.**   Approximately 15 days after the transfer of the assignments, Defendants FHLMC
as trustee for FREDDIE MAC, filed a Notice of Default in the county recorded.
Therefore, this assignments of deed of trust are in violation to comply with the law.

**114.**   On January 10, 2019, a Notice of Default was filed the Los Angeles County
Recorder's Office as Instrument # 20190028472.

**115**.    On April 4, 2019, a Notice of Sale was filed with the Los Angeles County
Recorder's Office as Instrument # 20190293573.

On April 26, 2019, Urgent – Notice of Violation Notice to cease and desist
Trustee Sale to Mr. Cooper c/o Bray Jay, President; Amar Patel, CFO; Anthony L.
Ebers, CEO, at 8950 Cypress Waters Blvd, Coppell TX 75019.

**116**.    On May 9, 2019, Second Notice of Sale were filed with the Los Angeles County
Recorder's Office as Instrument # 20190423555.

**117.**    On November 02, 2021, a Notice of Trustee Sale were filed with the Los Angeles
County Recorder's Office as Instrument # 20211639708.

**118.**    On December 27, 2021, a Notice of Trustee's Deed Upon Sale were filed with
the Los Angeles County Recorder's Office as Instrument # 20211908685.

**119**.    To date, there is no assignments assigning all right, title and interest in Plaintiffs'
Deed of Trust to the Trust.  Plaintiffs' Note and Deed of Trust are irreparably separated.

**120**.    Plaintiffs allege that only the Depositor is the rightful party that can convey the
asset into the trust pursuant to investor offering documents.

**121**.    Plaintiffs, therefore, alleges, upon information and belief, that none of the Parties
to neither the securitization transaction, nor any of the Defendants in this case, hold a
perfected and secured claim in the Property, and that all Defendants are estopped and
precluded from asserting an unsecured claim against Plaintiff's estate.

\\\

### PROPERTY

**122**.    The Real Property description which is the subject of this suit is commonly known
as 1720 W. Imperial Ave, Lancaster, CA 93534.

### FIRST CAUSE OF ACTION
### LACK OF STANDING/WRONGFUL FORECLOSURE
### (AGAINST ALL DEFENDANTS)

### A.    No Defendant Has Standing to Foreclose

**123**.    Plaintiff re-alleges and incorporated by reference all preceding paragraphs 1
through 122 as though fully set forth herein.

**124**.   An actual controversy has arisen and now exists between Plaintiffs and Defendants specified herein above, regarding their respective rights and duties, in that plaintiffs contends that Defendants and each of them, do not have the right to foreclose on the property because Defendants, and each of them, have failed to perfect any security interest in the Property.  Thus, the purported power of sale by the above specified Defendants, and each of them, no longer applies.  Plaintiffs further contends that the above specified Defendants, and each of them, do not have the right to foreclose on the property because said Defendants, and each of them, did not property comply with terms of Defendants' own securitization requirements and falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

**125**.   Plaintiffs are informed and believes and there upon allege that the only individual Who has standing to foreclose is the holder of the Note because they have a beneficiary interest?  The only individuals who are the holder of the Note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains.  Furthermore, all of the banks in the middle were **Paid in full**.

**126**.   Plaintiffs' request that this court find the **purported power of sale** Contained in the **Note and Deed of Trust has no force and effect at this time, because Defendants' actions in the proceeding, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices**, including, but not limited to violations of State Law designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage to Defendants, and each of the, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation and deem that any attempt sale of the Property is "**Unlawful and Void**".

### B.   MERS CANNOT BE A REAL PARTY IN INTEREST IN A SECURITIZED MORTGAGE

**127**.   Since the creation of plaintiff's Note herein and Deed of Trust, MERS was named the "beneficiary" of the Deed of Trust.

**128**.    Plaintiffs are informed and believes, and thereon alleges, that MERS Lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because MERS charter limits MERS' power and duties to functioning as an electronic registration system of certain types of securities.

**129**.    Plaintiffs are informed and believes MERS Business model is fraudulent, Because MERS® has a previous contractual agreement with bank, what courts are finding out through aggressive discovery and going through MERS own procedures it becomes obvious and clear that all of this authority and agents these 10's of 1000's of assignors and servicers claims to be a MERS member, have not been MERS members to begin with because MERS policy and procedures clearly state that the truth that when there is any securitized loan for example plaintiff original alleged loan with COUNTRYWIDE HOME LOANS, INC., the loan was allegedly sold to the FHLMC as trustee for "FREDDIE MAC". **Twelve years later MERS executed an assignment from MERS to Defendants FHLMC as trustee for "FREDDIE MAC", 12 years after the closing.**

**130**.    If our loan went into this trust the documents state in the purchasing Agreement and everything that were required to sale these loans to the trust had to go through the **depositors and the depositor for our loan through COUNTRYWIDE HOME LOANS, INC.** was allegedly REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC", and from the depositor to the issuing entity trust and MERS had admitted that they do not have no communication, agency, membership, or any type of relationship with REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC", or any of the them, **looking at the MERS policy and manuals and review the testimonies of MERS officers**. The policy manuals require when a loan is transferred and assigned to a non-MERS member it requires complete deactivation and resignation within the MERS systems. And what that means through MERS on Deposition in open court is when a loan is deactivated in their systems at the point MERS has no rights or beneficial interest in the recorded mortgage and Deed of Trust in the public record from that point forward, they essentially resign, and they are done. So, if our loan had been sold to REMIC TRUST OF FHLMC as trustee for "FREDDIE MAC" now we have found out through case and case law how MERS had continued to act like they have interest through the MERS

milestone reports, those reports have been manipulated just like the assignments Defendants FHLMC as trustee for "FREDDIE MAC", **because of litigation to try and steal our property WITHOUT DUE PROCESS OF LAW.** Because the milestone reports and applications have been altered and back dated, what we have seen in studying lawsuits for discovery requests against MERS is that the **courts in California have been saying who had** the authority to execute documents such as assignments in their name or to filed lawsuits "you must be members"

131. **It is at time that we will request the court to ask MERS to show me their members agreement that states a requirement in their policy, procedures, and rules manuals the governing documents at the time the trust closed on August 6, 2007.** We would like to see MERS executed agreement signed by both parties to be a MERS member to be the true party of interest and authority from MERS to executed an assignment to Defendants FHLMC as trustee for "FREDDIE MAC", if our loan were sold to NON-MERS members it required deactivation and resignation of MERS and it mean that MERS can no longer has any rights by its on admission has no rights to the Deed of Trust in the public record to go back and assign our property to Defendants FHLMC as trustee for "FREDDIE MAC". Under a fraudulent assignment of the deed of trust. MERS is no longer an authorized agent of the holder unless it has a separate agency contract with the new undisclosed principal. *In re Vargas (Banker CD Cal. 2008) 396 BR 511, 517, reported at 32 CEB RPLR 10 (Jan. 2009) the Court was disturbed that MERS moved for relief in what the Court determined was an improper attempt to obtain relief for undisclosed assigns. Id. At Overview.  So disturbed that the Court sanctioned MERS for its attempt at trickery [1].* this is because, as discussed in detailed herein, MERS is an agent, not a separate party to the deed of trust. It must show that it continued as that agent by demonstrating a valid agreement with each subsequent successor and/or assign.  It fails to provide any factual allegations that it was (or is) the agent *See Fed. Rules of Evid. Rule 803(7) and 803(10)* [**Absence of evidence is evidence that it does not exist, or the event did not occur.]**

132.   This is where MERS does not want to go.  From experience investigation Securitization transactions, most of the conduits and issuing entities in the securitization chain is not/were not MERS members with agency agreements.  This is why the MERS

Registry often show the loans as being "inactive MERS" own policy states that loan sold and transferred to non-MERS members are to be "Deactivated" in the MERS system. Theoretically if the loans were ever really transferred to any trust, MERS would have deactivated itself and been remove from the chain of title. The servicers use MERS as an escape hatch in every chain to title, usually by arguing that MERS is on a mortgage or deed of trust, it continues to have an active interest in the security instrument till the end of time, and regardless of any deaths, bankrupticies, or FTB Suspension of its principals.

**133**. "MERS" relies upon (*Mortgage Elec. Registration sys. V. Robinson (9th Cir. 20116) 671 F. App'x 562).*) in which the court held that MERS held an adverse interest because it had been named in the deed of trust. *Id at 563*. This matter is distinguishable because MERS records show the deed of trust as being deactivated, and MERS allegation state the loan was sold to subsequent entities, but it has failed to provide any factual allegations (other than conclusory) it remained as the beneficiary through those assignments. MERS role as the nominal beneficiary has been extinguished since 2005, material facts do not present in the Robinson matter. "In case around the country FHLMC as trustee for "FREDDIE MAC" Similarly failed to establish its standing by demonstrating that it had physical possession of the note at the time of the commencement of the foreclosure action. failure to prove its standing, to produce all evidence surrounding the purchase and possession of the "Original" Mortgage Note. This same logic applies to all foreclosure cases. Defendants **FHLMC as trustee for "FREDDIE MAC", similarly failed to establish its standing by demonstrating that if had physical possession of the commencement of the foreclosure notes at the time of the action.**

**134**.   Defendants, and each of them, through the actions alleged above, have illegally commenced foreclosure under the Note on the Property via a foreclosure action supported by false or fraudulent documents. Said unlawful foreclosure action has caused continues to cause Plaintiff's great and irreparable injury in that real property it unique.

**135**.   The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great

1 | and irreparable harm to Plaintiffs.  Plaintiffs will not have the beneficial use and
2 | enjoyment of its Home and will lose the Property.

3 | **136.**    Plaintiffs has no other plain, speedy or adequate remedy and the injunctive Relief
4 | prayed for below is necessary and appropriate at this time to prevent irreparable loss to
5 | Plaintiffs.  Plaintiffs has suffered and will continue to suffer in the future unless
6 | Defendants' wrongful conduct is restrained an enjoyed because real property is
   | inherently unique, and it will be impossible for Plaintiffs to determine the precise amount
7 | of damages it will suffer.

8 | \\\

9 | \\\

10 |                      **SECOND CAUSE OF ACTION**
11 |                      **BREACH OF CONTRACT**
   |          **(Against Defendant FHLMC as trustee for "FREDDIE MAC")**

12 | **137.**    Plaintiffs re-allege and incorporated by reference all previous paragraphs 1
13 | through 136 as though fully set forth herein.

14 | **138.**    The terms of the mortgage contract are clear.

15 | **139.**    Pursuant to paragraph 43 – Release, Defendants FHLMC as trustee for
16 | "FREDDIE MAC", and specifically, MERS, their electronic agent, was obligated to
17 | satisfy, release and reconvey the beneficial security interest in plaintiff's pledged Deed
18 | of Trust upon payment of all sums associated with the release of premium to FHLMC as
19 | trustee for "FREDDIE MAC" for Accommodated Party services rendered.

20 | **140.**    The Originator of allege lender COUNTRYWIDE HOME LOANS, INC. was paid
   | in full when it sold and relinquished its interest in plaintiffs' real property to BANK OF
21 | AMERICA, N.A…

22 | **141.**    The Originator of allege lender COUNTRYWIDE HOME LOANS, INC. failed to
23 | satisfy, release and reconvey the security instrument, thus breaching the terms found in
24 | paragraphs 43 of the Deed of Trust.

25 |                       **THIRD CAUSE OF ACTION**
26 |                       **FRAUD IN THE CONCEALMENT**
27 |                  **(Against All Defendants and Does 1-15)**

28 | **142.**    Plaintiffs re-alleges and incorporated by reference all proceeding paragraphs

1 through 141 as though fully set forth herein.

**143.**   Defendants concealed the fact the Loans were securitized as well as the Terms of the Securitization Agreements, including inter alia:

(1)   Financial Incentives paid, (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions.  By Concealing the securitization, Defendants concealed the fact that Borrower's Alleged Loan changed in character in as much as no single Party would hold the Note but rather the Note would include in a pool With other Notes, split into traches, and multiple Investors would Effectively buy shares of the income stream from the Loans.  Changing The character of the loan in this way had a materially negative effect On Plaintiffs that was known by Defendants but not disclosed.

**144.**   Defendants knew or should have known that had the truth been disclosed, plaintiffs would not have entered into the Loans.

**145.**   Defendants intended to induce plaintiffs based on these misrepresentations and Improper disclosures.

**146.**   Plaintiffs' reasonable reliance upon the misrepresentation was detrimental. But for failure to disclose the true and material terms of the transaction, plaintiff could have been alerted issue of concern.  Plaintiffs would have known of Defendants true intentions and profits from the proposed risky Loan.  Plaintiffs would have known that the actions of Defendants would have an adverse effect on the Value of plaintiff's Home.

**147.**   Defendants' failure to disclose the material terms of the transaction induced plaintiffs to enter into the loans and accept the services as alleged herein.

**148.**   Defendants were aware of the misrepresentations and profited from them.

**149.**   As a direct and proximate result of the misrepresentations and concealment, Defendants are guilty of malice, fraud and/or oppression.  Defendant's action was malicious and done willfully in conscious disregard of the rights and safety of plaintiffs in that the actions were calculated to insure plaintiffs.  As such plaintiffs are entitled to recover, in addition to actual damage, punitive damages to punish Defendants and deter them from engaging future misconduct.

## FOURTH CAUSE OF ACTION

## FRAUD IN THE INDUCEMENT

### (Against All Defendants and Does 15-30)

**150**.   Plaintiffs re-alleges and incorporated by reference all proceedings paragraphs 1 through 149 as though fully set forth herein.

**151**.   Defendants intentionally misrepresentation to plaintiffs those Defendants were Entitle to exercise the power of sale provision contained in the Deed of Trust. In fact, **Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.**

**152**.   Defendants' misrepresentation that they are the "Holder and owner" of the Note and the beneficiary of the deed of trust.  However, this was not true and was a misrepresentation of material fact.   **COUNTRYWIDE SUPPLEMENTS FUNDING LIQUIDITY POSITION, CALABASAS, CA.  August 16, 2007, COUNTRYWIDE FINANCIAL CORPORATION (NYSE: CFC) announced that is has supplemented its funding liquidity position by drawing on credit facility.  The company has accelerated its plans to migrate its mortgage productions into COUNTRYWIDE BANK, FSB.  Regulation FD Disclosure August 6, 2007. Secondary market demand for non-agency mortgage-backed securities has been disrupted**.  Defendants were attempting to collect on a debt to which they have no legal, this type of conduct is outrageous.  Defendants are fraudulently foreclosing on the property which they have no monetary or pecuniary interest. This type of conduct is outrageous.

**153**.   Defendants' failure to disclose the material terms of the transaction induced plaintiffs to enter into the Loans and accept the services as alleged herein.

**154**.   The material misrepresentations were made by defendants with intent to Cause plaintiff to reasonable rely on the misrepresentations in order to induce the plaintiffs to rely on the misrepresentations and foreclosure on the property.  **This material misrepresentation was made with the purpose of initiating the securitization process as Illustrated above, in order to profit from the sale of the property by selling the Note to Sponsor who then pool the Note and Sell it to investors on Wall Steet.**

**155**.   Defendants were aware of the misrepresentations and profited from them as a Direct and proximate result of the misrepresentations and concealment plaintiffs was damaged in an amount to be proven at trial, including but not limited to costs of Loan, Damage to plaintiffs' financial security, emotional distress and plaintiff has incurred costs and attorney fees.

**156**.   Defendants are guilty of malice, fraud and/or oppression.  Defendants Actions were malicious and done willfully in conscious disregard of the rights and safety of plaintiffs in that the actions were calculated to injure plaintiffs.  As such plaintiffs are entitled to recover, in addition to actual damages, punitive damages to punish defendants and to deter them from engaging in future misconduct.

### FIFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (Against All Defendants and Does 30-45)

**157**.   Plaintiff re-alleges and incorporated by reference all preceding paragraphs 1 through 156 as though fully set forth herein.

**158**.   the actions of defendants, as set forth herein, have resulted in the plaintiffs being threatened with the loss of the property.

**197**.   this outcome has been created without any right or privilege on the part of the defendants an as such their actions constitute outrageous or reckless conduct on the part of defendants.

**160**.   Defendants intentionally, knowingly, and recklessly misrepresentation to the plaintiff those defendants were entitled to exercise the power of sale provision contained in the deed of trust.  In fact, defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the property.

**161**.   Defendants' conduct – fraudulent attempting to foreclose on a property in which they have no right, title, or interest – is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

**162**.   Such conduct was undertaken with specific intent of inflicting emotional distress on the plaintiffs such that plaintiffs would be so emotional distress and debilitate that he/she would be unable to exercise legal rights in the property; the

right to title of the property, the right to cure the alleged default, right to verify the alleged debt that defendants are attempting to collect, and right to clear title to the property such that said title will regain its marketability and value.

**163**.   At the time defendants began their fraudulent foreclosure proceedings, defendants were not acting in good faith while attempting to collect on the subject debt.  Defendants, and each of them, committed the acts set forth above with complete; utter and Reckless disregard of the probability of causing Homeowners to suffer severe emotional distress.

**164**.   As an actual and proximate cause of defendants' attempt to fraudulently Foreclose on plaintiff's home the plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

**165**.   Plaintiffs did not default in the manner stated in the Notice of Default yet because defendants' outrageous conduct, plaintiffs have been living under the constant Emotional nightmare of losing the property.

**166**.   As a proximate cause of defendants' conduct, plaintiff has experienced Many sleepless nights, severe depression, lack of appetite, and loss of productivity at its place of employment.

**167**.    The conduct of defendants, and each of them, as herein described, was so Vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised ordinary people.  Plaintiff is therefore, entitled to punitive damages in an amount appropriate to punish defendants and to deter other from engaging in similar conduct.

## SIXTH CAUSE OF ACTION
## SLANDER OF TITLE
### (Against All Defendants and Does 45-60)

**168**.   Plaintiff re-alleges and incorporated by reference all preceding paragraphs 1 through 167 as though fully set forth herein.

**169**.   Plaintiffs incorporates here each and every allegation set forth above. Defendants, and each of them, disparaged plaintiff's exclusive valid title by and through the preparing, positing publishing, and recording of the documents

previously described herein, including, but not limited to, the Notice of Default,
Notice of Trustee's Sale, and Trustee's Deed.

**170.**   Said defendants knew or should have known that such documents were
improper in that at the time of the execution and delivery of **said document,
defendants had no right, title, or interest in the property.**  These documents
were naturally and commonly to be interpreted as denying, disparaging, and casting
doubt upon plaintiff's legal Title to the property.  By posting, publishing, and
recording said documents, defendants' Disparagement of plaintiff's legal title was
made to the world at large.

**171.**   As a direct and proximate result of defendants' conduct publishing these
documents, plaintiffs title to the property has been disparaged slandered, and there
is cloud on plaintiff's title and plaintiff has suffered, and continues to suffer,
damages in an amount to be proved at trial.

**172.**   As a further proximate result of defendants' conduct, plaintiff has incurred
Expenses in order to clear title to the property.  Moreover, these expenses are
continuing, and plaintiff will incur additional charges for such purposed until the
cloud on plaintiff's title to the property has been remove.  The amount of future
expenses and damages are not ascertainable at this time.

**173.**   As a further direct and proximate result of defendant's conduct, plaintiff has
suffered humiliation, mental anguish, anxiety, depression, and emotional and
physical distress, resulting the loss of sleep and other injuries to us health and well-
being, and continues to suffer such injuries on an ongoing basis.  The amount of
such damages shall be proven at trial.

**174.**   At the time that the false and disparaging documents were created and
Published by the defendants, Defendants knew the documents were false and
created and published them with the malicious intent to injure plaintiffs and deprive
them of their exclusive right title, and interest in the property, and obtain the
property for their own use by unlawful means.

**175.**   the conduct of the Defendants in publishing the documents described above
was fraudulent, oppressive, and malicious.  Therefore, plaintiff is entitled to an
award of Punitive damages in an amount sufficient to punish defendants for their

malicious conduct and deter such misconduct in the future.

## SEVENTH CAUSE OF ACTION:
## QUIET TITLE
### (Against All Defendants and Does 60-75)

**176.**   Plaintiffs re-alleges and incorporated by reference all preceding paragraphs 1 through 175 as though fully set forth herein.

**177.**   Plaintiffs are entitled to equitable relief by a judicial decree and order declaring plaintiffs to be the title owner of record of the property as to the effective date of said cancellation, and **quieting plaintiff's title therein and thereto subject only to such legitimate liens and encumbrances as the Court may deem void,** and avoiding any liens or encumbrance upon the property created by defendants or by their putative predecessors, or by any of them.

**178.**   Plaintiffs' desires and is entitled to a judicial declaratory quieting title in plaintiffs' property as of the date on which the loan transaction was consummated.

## DECLARATORY RELIEF
### (Against All Defendants and Does 75-100)

**179.**   Plaintiff re-alleges and incorporated by reference all preceding paragraphs 1 through 178 as though full set forth herein.

**180.**   An actual controversy has arisen and now exists between plaintiff and defendants concerning their respective rights and duties regarding the Note and Trust Deed.

**181.**   Plaintiff contends that pursuant to the Loans, Defendants do not have authority to foreclose upon and sell the property.

**182.**   Plaintiffs are informed and believes and upon that basis alleges that defendants.

**183.**   Dispute Plaintiff's contention and instead contend they may property Foreclose upon the property.

**184.**   Plaintiff, therefore, request a judicial determination of the rights, obligations and interests of the parties with regard to the property, and such determinations are necessary and appropriate at this time under circumstances and interests with

regard to the property.

**185**.    Plaintiffs request a determination of the validity of the Trust Deed as of the Date the Note were assigned without a concurrent assignation of the underlying Trust Deeds.

**186**.    Plaintiffs request a determination of the validity of the NOD (Notice of Default).

**187**.    Plaintiffs request a determination of whether any Defendants has authority be to Foreclose on the Property.

### NINTH CASUE OF ACTION

### Violation of TILA, 15 U.S.C. § 1601, et. seq.

### (Against All Defendants)

**188**.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs 1 through 187 though fully set forth herein.

**189**.    Defendant violated TILA by failing to provide Plaintiff with accurate Material disclosure required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable-rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise

them to compare similar loan products with other lenders.  It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

**190**.    Any and all statute[s] of limitations relating to disclosure and notice required Pursuant to *15 U.S.C. § 1601, et. seq*. was tolled due to defendants' failure to effectively provide the required disclosure and notices.

**191**.    An actual controversy now exists between plaintiffs who contents he/she has the Right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, defendants deny that right.

**192**.    As a direct and proximate result of defendant s violation plaintiffs have incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or

to be paid in connection with transaction.

**193.**   Defendants were unjustly enriched at the expense of plaintiffs who is
Therefore, entitled to equitable restitution and disgorgement of profits obtained by
defendants.

**194.**   Defendants' actions in this matter have been willful, knowing, malicious
Fraudulent and oppressive, entitling plaintiffs to punitive damages in an amount
appropriate punish defendants and to deter other from engaging in the same
behavior.  WHEREFORE, Plaintiff prays for relief as set forth below.

### TENTH CASUE OF ACTION
### Violation of RESPA, 1 U.S.C. § 2601 et. seq.
### (Against All Defendants)

**195.**   Plaintiffs re-alleges and incorporates by reference all preceding paragraphs 1
through 194 as though fully set forth herein.

**196.**   The Loan to Plaintiffs were a federally regulated mortgage loan as defined in
RESPA.

**197.**   Housing and Urban Development (HUD's) 1999 Statement of Policy
Established a two-part test for determining the legality of lender payments to
mortgage brokens for table funded transactions and intermediary transaction under
RESPA:

    a).   whether goods or facilities were actually furnished, or services were
        actually, performed for the compensation paid and;

    b).   whether the payments are reasonably related to the value of the goods
        or facilities that were actually furnished or services that were actually
        performed.  In applying this test HUD believes hat total compensation
        should be scrutinized to assure that it is reasonably related to the
        goods, facilities, or services furnished or performed to determine
        whether it is legal under RESPA.  The interest and income that
        defendants have gained is disproportionate to the situation plaintiffs
        find themselves in due directly to defendant's failure to disclose that
        they will gain a financial benefit while plaintiffs suffer financially as a

result of the loan product sold to plaintiffs.

**198.** No separate fee agreements, regarding the use of COUNTRYWIDE HOME LOANS, INC. Cost of Savings as the Index for the basis of this loan, Disclosure of additional income due to interest rate increases or the proper form and procedure in relation to the Borrower's rights to Cancel were provided.

**199.** Defendants **violated RESPA because the payments between the defendants were misleading and designed to create a windfall.** These actions were deceptive, fraudulent and self-serving. As a proximate result of defendants' action, plaintiff has been damages in an amount not yet ascertained, to be proven at trial. WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as set forth herein.

## ELEVENTH CAUSE OF ACTION

### Violation of Business and Professional Code Section 17200

### (Against All Defendants)

**200.** Plaintiff re-alleges and incorporates by reference the above paragraphs 1 through 199 as though as set forth fully herein.

**A.    Plaintiff Suffered Damages as a Result of Defendants Conduct:**

**201.** As a direct result of defendant's acts, plaintiffs have incurred actual damages Consisting of mental and emotional distress, nervousness, grief, embarrassment, loss of sleep, anxiety, worry, mortification, shock, humiliation, indignity, pain and suffering, and other injuries.

**202.** Plaintiff incurred out of pocket monetary damages.

**203.** Plaintiff continues to incur monetary damages.

**204.** Plaintiff will incur the loss of his/her personal residence if the non-judicial Foreclosure and eviction are allowed to proceed.

**205.** Each of Defendants harassing acts were so willful, vexatious, outrageous, Oppressive, and maliciously calculating enough, so as to warrant statutory penalties and punitive damages.

## TWELETH CAUSE OF ACTION

### Violation Of § 1788.17 of the RFDCPA

**206**.  Plaintiff re-alleges and incorporates by reference the above paragraphs 1 through 205 as though set forth fully herein.

**207**.  *California Civil Code § 1788.17 require that defendants comply with the provision of 15 U.S.C. § 1692, through their acts including but not limited to the following:*

    (a)    The defendants violated *California Civil Code § 1788.17* by engaging In conduct the natural consequence of which is to harass, oppress, And abuse person in connections with the collection of the alleged Debt, a violated *California Civil Code § 1692(d).*

    (b)    the defendants violated *California Civil Code § 1788.17* by Misrepresentation the status of the alleged debt, a violation of *15 U.S.C. § 1692(e)(s)(A),*

    (c)    the defendants violated *California Civil Code § 1788.17* by using Unfair or unconscionable means to collect or attempt to collect an Alleged debt, a violation *15 U.S.C. § 2692(f),* and

    (d)    The defendants violated *California Civil Code § 1788.17* by using Deceptive means to collect or attempt to collect a debt from the Defendants, a violation of *15 U.S.C. § 1692e(10).*

**208**.  The foregoing violation of 15 U.S.C. *§ 1692* by Defendants result in separate violations of *California Civil Code § 1788.17.*

**209**.  The foregoing acts by defendants were willful and knowingly violations of Title *1.6C of the California Civil Code (FRDCPA),* are sole and separate violations of under California Civil Code *§ 1788.30(b)* and trigger **Multiple $2000.00 penalties**.

**210**.  *California Civil Code § 1788.17* provides that Defendants are subject to the Remedies of *15 U.S.C. § 1692(k),* for failing to comply with the provisions of *15 U.S.C. § 1692(b)(6) and § 1692(c)c.*

**211**.  The foregoing acts by Defendants were intentional persistent, frequent and Devious violations, *15 U.S.C. § 1692*, which trigger **additional damages of $ 2000.00** under *15 U.S.C.§ 1692(k)(a)(2)(A).*

## THIRTENTH CAUSE OF ACTION

### Violation of Civil Code § 1572

**212.** Plaintiff re-alleges and incorporates by reference the above paragraphs 1 thru 211 as though set forth fully herein.

**213.** The misrepresentations by Defendants' and/or Defendants' predecessors, Failures to disclose, and failure to investigate as described above were made with the intent to induce Plaintiff to obligate his/herself on the alleged Loan in reliance on the integrity of defendants and/or Defendants' predecessors.

**214.** Plaintiffs are an unsophisticated customer whose reliance upon Defendants and/or Defendants' predecessors were reasonable and consistent with the Congressional intent and purpose of *California Civil Code § 1572 enacted in 1872* and designed to assist and protect consumer similarly situated as Plaintiff in this action.

**215.** As an unsophisticated customer, Plaintiff could not have discovered the true Nature of the material facts on their own.

**216.** The accuracy by Defendants and/or defendants' predecessors of Representation is important in enabling consumers such as Plaintiff to compare market lenders in order to make informed decisions regarding lending transactions such as a loan.

**217.** Plaintiff was ignorant of the facts which Defendants and/or Defendants Predecessors misrepresented and failed to disclose.

**218.** Plaintiff's reliance on Defendants and/or Defendants' predecessors was a Substantial factor in causing his/her harm.

**219.** Had the terms of the alleged Loan been accurately represented and disclosed by Defendants and/or Defendants' predecessors, Plaintiff would not have accepted the Loan not been harmed.

**220.** Defendants and/or predecessors conspired and agreed to commit the above-mentioned fraud.

**221.** As a proximate result of Defendants and or Defendants' predecessor' fraud, plaintiff has suffered damages in an amount to be determined at trial.

**222.** The conduct of Defendants and/or Defendants' predecessors as mentioned

above was fraudulent within the meaning of *California Civil Code § 3294(c)(3),* and by virtue thereof, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and make an example of the Defendants. A "wrongful Foreclosure" cause irreparable harm to Plaintiffs and will cause pecuniary compensation which will not afford adequate relief because Plaintiff's Home is unique.

**223.**. Injunctive relief is necessary to enjoin Defendants from foreclosing upon Plaintiffs' Home since they lack standing to and any enforceable rights under the Promissory Note.

**FOURTEENTH CAUSE OF ACTION**

**TEMPORARY RESTRAINING ORDER AND FOR INJUNCTIVE RELIEF**

**224**.   Plaintiff re-allege and incorporates by reference all preceding paragraphs 1 thru 223 as though fully set forth herein.

**225**.   Plaintiffs are the record title holder of the property and are now being threatened with irreparable injury be the conduct of Defendants.

**226**.   Plaintiffs will continue to be in jeopardy injury by the Defendants' wrongful conduct by the now threatened foreclosure sale causing irreparable injury by denying them the Right to maintain the status quo between the party's pending resolution of the present dispute.

**227**.   Plaintiffs have no adequate remedy at law for both the factual and threatened injuries herein described. Plaintiff's real property residence and rights. Involved are non-fungible and utterly unique so that it will be impossible to accurately measure in monetary terms, the damage caused by Defendants' wrongful conduct.

**228**.   Defendants' numerous violations of federal and state statute and inability to establish a claim of right to Plaintiffs' Note or Deed of Trust establish Plaintiffs' claim as more probable than not, and Plaintiffs will likely prevail at the time trial.

**229**.   Plaintiffs request that Defendants and its agents and employees be enjoined from Prosecuting any continuance of a foreclosure sale pending trial.

**FIFTEENTH CAUSE OF ACTION**

**(Cancellation of Instrument(s) – Assignment of DOT,**

### SOT, NOD, NOTS and TDUS)

### (Against All Defendants)

**230**.    plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 229, inclusive, as though fully set forth herein.

**231**.    If the wrongfully recorded Assignment of DOT, SOT, NOD, NOTS, and TDUS instruments are left outstanding, Plaintiffs will continue to suffer loss and damages.

**232**.    Plaintiffs are informed and believes, and therefore, alleges, that FEDERAL HOME LOAN MORTGAGE CORPORATION (FHLMC as trustee for "FREDDIE MAC", Credit Risk Transfer Trust Series 2017-2, as owner of Related Mortgage Loan, and NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER (SERVICER), BRITNEY FISHER "Attorney in fact", and Defendant QUALITY LOAN SERVICE CORPORATION (QLS "Debt Collector", ADRIANA BANUELOS "Assistant VP", RONALD ALONZO (Ass. Secretary), Attorney MATTHEW E. PODMENIK, Esq. (SBN 219364) MELISSA ROBBINS COUTTS Esq. (SBN 246723), DEBORAH A. BOYD, Esq. (SBN 136296), MCCARTHY & HOLTHUS, LLP (Law Firm) acted willfully and with a conscious disregard for Plaintiff's rights and with a specific intent to defraud and injure Plaintiff, by causing the Assignment of the DOT, SOT, the NOTS, and TDUS instruments to be prepared and recorded without a factual or legal basis for doing so.

**233**.    Upon information and belief, these acts by Defendants constitute fraud, Oppression and malice *under Cal. Civil Code § 3294*.  Defendants acts with a conscious disregard for the requirements to conduct a non-judicial foreclosure sale *under civil code 2924 et sec*. knowing they had taken a calculated risk that Plaintiff would not contest.

**234**.    By virtue of Defendants' willful and wrongful conducts as herein alleged Above, Plaintiff is entitled to general and special damages according to proof at trial, but not less than $ **1,000,000.00** as well as punitive and exemplary damages as determined by this Court.

### PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED as Prayer for Relief, and for the foregoing reasons, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final hearing, Plaintiffs be awarded Judgement:

    d. The Depositor has no enforceable secured or unsecured claim against the Property,

    e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property.

## FOR THE SECOND CAUSE OF ACTION:

1. For Compensatory Damages in an amount to be determined by proof at trial,
2. For Special Damages in an amount to be determined by proof at trial,
3. For General Damages in an amount to be determined by proof at trial,
4. For Punitive Damages as allowed by law,
5. For Restitution as allowed by law,
6. For Attorney Fees and Costs of this action,
7. For Declaratory Relief, including, but not limited to be following Decrees of this Court that:    a. Plaintiffs, plaintiffs are the prevailing party

## FOR THE THIRD CAUSE OF ACTION:

1. For Compensatory Damages in according to proof at time of trial,
2. For Special Damages in according to proof at time trial,
3. For costs of suit incurred herein,
4. For Punitive Damages subject to proof at time of trial,
5. For Restitution as allowed by law,
6. For Reasonable attorney's fees provided by contract or statute, and
7. For such other and further relief as the court may deem just and proper.

## FOR THE FOURTH CASUE OF ACTION:

1. For Damages as provided by statute,
2. For Costs of Suit incurred herein,
3. For Punitive Damages are provided by statute,
4. For Reasonable attorney fees subject to proof at time of trial,
5. For such other and further relief as the court may deem just and proper.

## FOR THE FIFTH CAUSE OF ACTION:

1. For Damages as provided by statute,
2. For Reasonable attorney fees as provided by contract or statute, and
3. For such other and further relief as the court may deem just and proper.

## FOR THE SIXTH CAUSE OF ACTION:

1. For General Damages subject to proof at time of trial,

3. For such other and further relief as the court may deem just and proper
4. For Declaratory Relief, including but not limited to the following Decrees of this Court that:
   a. Plaintiffs, Plaintiffs, are the prevailing party,
   b. The Trustee of the Trust have no enforceable secured or unsecured claim against the Property,
   c. The Sponsor has no enforceable secured or unsecured claim against the Property,
   d. The Depositor has no enforceable secured or unsecured claim against the Property,
   e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property,

## FOR THE NINTH CAUSE OF ACTION:

1. For an Order enjoying Defendants from continuing to violate the statute alleged herein,
2. For Costs of suit incurred herein,
3. For Reasonable attorney fees subject to proof and as available by contract or statute, and
4. For such other and further relief as the court may deem just and proper
5. For Declaratory Relief, including but not limited to the following Decrees of this Court that:
   a. Plaintiffs, Plaintiffs are the prevailing party,
   b. The Trustee of the Trust have no enforceable secured or unsecured claim against the Property,
   c. The Sponsor has no enforceable secured or unsecured claim against the Property,
   d. The Depositor has no enforceable secured or unsecured claim against the Property,
   e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property,

## FOR THE TENTH CAUSE OF ACITON:

1. For punitive damages subject to proof at time of trial,
2. For costs of suit incurred herein,
3. For reasonable attorney's fees subject to proof and as available by contract or statute; and
4. For such other and further relief as the court may deem just and proper.
5. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a. Plaintiff, Plaintiff is the prevailing party,
    b. The Trustees of the Trust have no enforceable secured or unsecured claim against the Property,
    c. The Sponsor has no enforceable secured or unsecured claim against the Property,
    d. The Depositor has no enforceable secured or unsecured claim against the Property,
    e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property,

**FOR THE ELEVENTH CAUSE OF ACTION:**

1. For Compensatory Damages in an amount to be determined by proof at trial,
2. For Special Damages in an amount to be determined by proof at trial,
3. For General Damages in an amount to be determined by proof at trial,
4. For Punitive Damages allowed by law,
5. For Restitution as allowed by law,
6. For Attorney's Fees and Costs of this action,
7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:  a. Plaintiff, Plaintiffs is the prevailing party,

**FOR TWELFTH CAUSE OF ACTION:**

1. For Compensatory Damages in an amount to be determined by proof at trial,
2. For Special Damages in an amount to be determined by proof at trial,
3. For General Damages in an amount to be determined by proof at trial,
4. For Punitive Damages as allowed by law,
5. For Restitution as allowed by law,
6. For Attorney's Fees and Costs of this action,
7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:  A. Plaintiff, Plaintiff is the prevailing party,

**FOR THE THIRTEENTH CAUSE OF ACTION:**

1. For Compensatory Damages in an amount to be determined by proof at trial,
2. For Special Damages in an amount to be determined by proof at trial,
3. For General Damages in an amount to be determined by proof at trial,
4. For Punitive Damages as allowed by law,
5. For Restitution as allowed by law,
6. For Attorney's Fees and Costs of this action,

## ALL ATTACHMENT OF EXHIBIT FOR THE COURT RECORD

**Exhibit "A"**    DEED OF TRUST / GRANT DEED

**Exhibit "B"**    5/17/2012, a Corporation Assignment of Deed of Trust
#20120741476

**Exhibit "C"**    10/23/2012, a Corporation Assignment of Deed of Trust
#20121606089

    12/24/2018, a Corporation Assignment of Deed of Trust
from NATIONSTAR MORTGAGE LLC TO FHLMC as trustee for
"FREDDIE MAC" instrument # 20181300032.

**Exhibit "D"**    11/02/2021, NOTICE OF TRUSTEE SALE OF "QLS"
#20211639708.
12/ 27/ 2021, a Notice of Trustee's Deed Upon Sale instrument
#20211908685.

**Exhibit "E"**    01/10/2019, a NOTICE OF DEFAULT was recorded by Aztec
Foreclosure Corporation, in the Official Records, Los Angeles
County as instrument #20190028472

**Exhibit "F"**    04/04/2019, a NOTICE OF TRUSTE SALE was recorded by Aztec
Foreclosure Corporation, in the Official Records, Los Angeles
County as instrument #20190293573 and second recorded of
NOTICE OF TRUSTEE SALE ON 05/9/2019 instrument
#20190423555.
04/26/2019, URGENT- NOTICE OF VIOLATION NOTICE TO
CEASE AND DESIST TRUSTEE SALE. "SEE ATTACHMENT"

**Exhibit "G"**    Certified Forensic Audit by Arthur A. Bernardo and Notice of
Bloomberg Property Analysis Report.

COMPLAINT FOR WRONGFUL FORECLOSURE, DECLARATORY RELIEF, ETC.

# EXHIBIT "A"

## DEED OF TRUST / GRANT DEED

This page is part of your document - DO NOT DISCARD

**20071921645**

Pages: 022

610    142626758    D2    001    001

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/16/07 AT 08:00AM

Fee:  73.00
Tax:  0.00
Other: 0.00
Total: 73.00

Title Company

## TITLE(S) :

L E A D    S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.

Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

RECORDING REQUESTED BY
STEWART TITLE

Recording Requested By:
S. SANCHEZ

08/16/07

20071921645

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
VERONICA L. HERRINGTON

86 6|1 603

─── [Space Above This Line For Recording Data] ───

402-12366-KAW
[Escrow/Closing #]

0001426267580800 7
[Doc ID #]

21

## DEED OF TRUST

MIN 1000157-0007477237-3

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   AUGUST 06, 2007   , together with all Riders to this document.
(B) "Borrower" is
BRENDEM PLONG, AND MAREINE PLONG, HUSBAND AND WIFE AS JOINT TENANTS

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

 -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291
CONV/VA

Form 3005  1/01



" 2 3 9 9 1 "

* 1 4 2 6 2 6 7 5 8 0 0 0 0 0 1 0 0 6 A *

DOC ID #: 00014262675808007

Borrower's address is
14500 DAYLILY LANE, PANORAMA CITY, CA 91402
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
**(D) "Trustee"** is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  AUGUST 06, 2007   . The Note states that Borrower owes Lender
THREE HUNDRED SEVENTY FOUR THOUSAND FIVE HUNDRED FIFTY and 00/100

Dollars (U.S. $ 374,550.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   SEPTEMBER 01, 2037 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: 00014262675808007

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
    COUNTY                    of            LOS ANGELES                :
    [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
LOT 3 OF TRACT MAP 52655, IN THE CITY OF LANCASTER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 1320, PAGES 96 THROUGH 100 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number: 3122-040-082                    which currently has the address of
                    1720 WEST IMPERIAL AVENUE, LANCASTER
                                        [Street/City]
California        93534          ("Property Address"):
        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

VMP ®  -6A(CA) (0207)        CHL (08/05)            Page 3 of 16                    Form 3005 1/01

DOC ID #: 00014262675808007

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

VMP -6A(CA) (0207)        CHL (08/05)                    Page 4 of 16                              Form 3005  1/01

DOC ID #: ⬛⬛⬛⬛⬛675808007

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: ███████675808007

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of



DOC ID #: 6758080007

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: ⬛⬛⬛675808007

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #: ███████675808007

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: ████████675808007

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: ████████ 675808007

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

VMP -6A(CA) (0207)          CHL (08/05)          Page 11 of 16          Form 3005 1/01

*13*

DOC ID #: ▓▓▓▓▓675808007

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: ███████675808007

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

DOC ID #: [redacted]675808007

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC ID #: ███████675808007

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BRENDEM PLONG                    -Borrower

_____ (Seal)
MAREINE PLONG                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

17

DOC ID #: ████ 675808007

State of California
County of ~~Los Angeles~~ } ss.

On ~~August 9, 2007~~ before me, ~~Carrie Medvedeff, Notary Public~~ ~~Brendan Plong and Marleine Plong~~ personally appeared

_____

_____

_____ ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Carrie Medvedeff_ (Seal)

CARRIE MEDVEDEFF
COMM. #1562616
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires Mar. 22, 2009
BCT4

VMP -6A(CA) (0207)    CHL (08/05)    Page 16 of 16    Form 3005 1/01

*18*

LOAN #: 6758

# FIXED/ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this SIXTH         day of
AUGUST, 2007       , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
1720 WEST IMPERIAL AVENUE
LANCASTER, CA 93534
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE
TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT
BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.   ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of          6.125 %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
SEPTEMBER, 2014  , and the adjustable interest rate I will pay may change on that day every
12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate,
and each date on which my adjustable interest rate could change, is called a "Change Date."

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)(d)                    Page 1 of 5





LOAN #: ████████6758

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUART  percentage points (   2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.125 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   11.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                                Page 2 of 5



LOAN #: ████6758

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B.1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                           Page 3 of 5

LOAN #: ████6758

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

● FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 4 of 5

LOAN #: ⬛⬛⬛⬛6758

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_Brdom Plong_ _____ (Seal)
BRENDEM PLONG                                     -Borrower

_Mareine Plong_ _____ (Seal)
MAREINE PLONG                                     -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 5 of 5



This page is part of your document - DO NOT DISCARD

 **20071921644**   Pages: 002



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/16/07 AT 08:00AM

Fee: 11.00
Tax: 458.15
Other: 0.00
Total: 469.15

**Title Company**

TITLE(S) : **DEED**



L E A D   S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.    Number of AIN's Shown

   E460070    THIS FORM IS NOT TO BE DUPLICATED   

RECORDING REQUESTED BY
STEWART TITLE OF CALIFORNIA

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

Brendem Plong
Mareine Plong
1720 West Imperial Avenue
Lancaster, CA 93534

08/16/07



**20071921644**

86 - 611603

*EMILY'S GARDEN*

# GRANT DEED

Title Order No:86611603                Escrow No:402-12366   458.15                APN: 3122-040-082
The undersigned grantor(s) declare(s) documentary transfer tax is $_____
[X] Computed on full value of property conveyed    [ X ] City of LANCASTER

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**GIBRALTAR HOMES, LLC, a California limited liability company,**

Hereby GRANTS to Brendem Plong and Mareine Plong, Husband and Wife as Joint Tenants

the real property in the City of Lancaster, County of Los Angeles, State of California, described as follows:

Lot 3 of Tract No. 52655, as per map filed in Book 1320, pages 96 through 100 inclusive of Maps, records of said Los Angeles County, California.

EXCEPT all oil or other hydrocarbon products and all other mineral products, as granted to David Deutsch, Emilie Deutsch and Irene Warren by deed recorded August 22, 1990 as Instrument No. 90-1452194 of Official Records.

More commonly known as: 1720 West Imperial Avenue, Lancaster, CA 93534

Dated: July 16, 2007                        GIBRALTAR HOMES, LLC, a California limited liability company
                                            by:     Octal Development, Inc., Managing Member

                                            by: _____
                                                    Gregory K. Qulin
                                            its:    President

State of California                    }
County of Los Angeles                  } §

On July 16, 2007 before me, Lillian Park, Notary Public, personally appeared **Gregory K. Quan**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
              *Signature*

LILLIAN PARK
COMM. #1742113
Notary Public - California
Los Angeles County
My Comm. Expires May 24, 2011

*MAIL TAX STATEMENTS AS DIRECTED ABOVE*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "B"

5/17/2012 A CORPORATION ASSIGNMENT OF DEED OF TRUST
INSTRUMENT NUMBER # 2012741476

This page is part of your document - DO NOT DISCARD

## 20120741476





Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/17/12 AT 12:05PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



610 ████6758  D8  001  003



LEADSHEET



201205170220063

00005804726



003990597

SEQ:
01

ERDS - Daily



**THIS FORM IS NOT TO BE DUPLICATED**          E13

Recording Requested By:
**Bank of America**
Prepared By:  Bank of America
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
450 E. Boundary St.
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID# 14614262675820053

Property Address:
1720 Imperial St
Lancaster, CA 93534-2867

CAO-ADT 17808141                    5/8/2012

This space for Recorder's use

MIN #: 1000157-0007477237-3              MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP whose address is 8609 WESTWOOD CENTER, VIENNA, VA 22183 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          COUNTRYWIDE HOME LOANS, INC.

Original Borrower(s):     BRENDEM PLONG, AND MAREINE PLONG, HUSBAND AND WIFE AS JOINT TENANTS

Original Trustee:         RECONTRUST COMPANY, N.A.

Date of Deed of Trust:    8/6/2007

Original Loan Amount:     $374,550.00

Recorded in Los Angeles County, CA on: 8/16/2007, book N/A, page N/A and instrument number 20071921645

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

— MAY 1 0 2012

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____

Janet Gordon
Assistant Secretary

State of California
County of Ventura

On ___MAY 10 2012___ before me, _____Virginia M Claudet-Alfaro_____, Notary Public, personally appeared
           Janet Gordon
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

VIRGINIA M. CLAUDET-ALFARO
Commission # 1938836
Notary Public - California
Ventura County
My Comm. Expires May 28, 2015

Notary Public: _____Virginia M Claudet-Alfaro_____    (Seal)
My Commission Expires: __May 28, 2015__

DocID# / 14614262675820053

# EXHIBIT "C"

10/23/2012 A CORPORATION ASSIGNMENT OF DEED OF TRUST
INSTRUMENT NUMBER # 20121606089

12/24/2018, A CORPORATION ASSIGNMENT OF DEED OF TRUST
FROM NATIONSTAR MORTGAGE LLC TO FHLMC as trustee for
FREDDIE MAC INSTRUMENT NUMBER # 20181300032

2

Recording requested by:
BANK OF AMERICA, N.A,
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS
SERVICING, LP



10/23/2012

*20121606089*

When recorded mail to:
BANK OF AMERICA N.A
DOCUMENT PROCESSING MAIL
CODE: TX2-979-01-19
4500 AMON CARTER BLVD
FORTH WORTH, TX 76155
Attn: ASSIGNMENT UNIT

CORPORATION ASSIGNMENT OF DEED OF TRUST
Doc. ID# 57414262675894396
Commitment# 1J0619

For value received, the undersigned, BANK OF AMERICA, N.A, SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING,
LP, 1800 TAPO CYN ROAD, SIMI VALLEY, CALIFORNIA 93063, hereby grants, assigns
and transfers to:
NATIONSTAR MORTGAGE, LLC
350 HIGHLAND DRIVE, LEWISVILLE, TX 75067

All beneficial interest under that certain Deed of Trust dated  8/06/07,
executed by: BRENDEM PLONG and MAREINZ PLONG, Trustor as per TRUST DEED
recorded as Instrument No. 20071921645 on 8/16/07 in Book ———— W/    Page
———— V  of official records in the County Recorder's Office of LOS ANGELES
County, CALIFORNIA.
  Tax Parcel = 3122040082,   LOS ANGELES COUNTY TAX COLLECTOR
Original Mortgage $374,550.00
1720 WEST IMPERIAL AVENUE, LANCASTER, CA 93534

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Deed of Trust.

Dated: 10/12/2012        BANK OF AMERICA, N.A, SUCCESSOR BY MERGER TO BAC HOME
                         LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS
                         SERVICING, LP

                    By
                         VALERIE WHITE, ASSISTANT VICE PRESIDENT

State of California
County of Ventura

On 10/12/2012 before me, BONNIE MICHAUD , Notary Public, personally appeared
VALERIE WHITE, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her their
authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature:
          BONNIE MICHAUD

BONNIE MICHAUD
Commission # 1854792
Notary Public - California
Los Angeles County
My Comm. Expires Jun 19, 2013

Prepared by: VALERIE WHITE
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063
Phone#: (213) 345-1558   Ext: 1558



## ASSIGNMENT OF DEED OF TRUST 05/17/2012

Valerie White Assigned the Deed of Trust to Nationstar Mortgage, LLC. This position of unilateral transfer is further strengthened by the fact that there is no evidence of verifiable proof of funds; a note endorsement; a bill of sale; a declaration of value; or transfer taxes as having been paid to Los Angeles County "for value received".

Recording requested by:
BANK OF AMERICA, N.A.
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS
SERVICING, LP

When recorded mail to:
BANK OF AMERICA N.A
DOCUMENT PROCESSING MAIL
CODE: TX2-979-01-19
4500 AMON CARTER BLVD
FORTH WORTH, TX 76155
Attn: ASSIGNMENT UNIT



CORPORATION ASSIGNMENT OF DEED OF TRUST
                                Doc. IDN  57414262675494156
                                Commitment# 1J06419

For value received, the undersigned, BANK OF AMERICA, N.A., SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING,
LP, 1800 TAPO CYN ROAD, SIMI VALLEY, CALIFORNIA 93063, hereby grants, assigns
and transfers to:
NATIONSTAR MORTGAGE, LLC
350 HIGHLAND DRIVE, LEWISVILLE, TX 75067

All beneficial interest under that certain Deed of Trust dated  3/26/07,
executed by: BRENDEN PLONG and MARRISE PLONG, Trustor as per TRUST DEED
recorded as Instrument No. 20071921645 on 8/16/07 in Book _____ Page
_____ of official records in the County Recorder's Office of LOS ANGELES
County, CALIFORNIA
     Tax Parcel - 3122040083.  LOS ANGELES COUNTY TAX COLLECTOR
Original Mortgage $374,559.00
1720 WEST IMPERIAL AVENUE, LANCASTER, CA 93534.

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Deed of Trust

Dated: 10/12/2012      BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME
                       LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS
                       SERVICING, LP

                       By _____        Page
                          VALERIE WHITE, ASSISTANT VICE PRESIDENT

State of California
County of Ventura

On 10/12/2012 before me, BONNIE MICHAUD , Notary Public, personally appeared
VALERIE WHITE, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her their
authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal

Signature _____
           BONNIE MICHAUD



Prepared by: VALERIE WHITE
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063
Phone#. (213) 365-1558  Ext. 1558

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*

This page is part of your document - DO NOT DISCARD



**20181300032**



Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/24/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 20.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 95.00 |



L E A D S H E E T



201812240150028

00016103081



009535980

SEQ:
01

SECURE - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED

E08_181221_

FOR REFERENCE ONLY: 20181300032

Title365

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING ████████ "PLONG"

For Value Received, NATIONSTAR MORTGAGE LLC hereby grants, assigns and transfers to FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR FREDDIE MAC SEASONED CREDIT RISK TRANSFER TRUST, SERIES 2017-2, AS OWNER OF THE RELATED MORTGAGE LOAN at 8200 JONES BRANCH DRIVE, MCLEAN, VA 22102-3110 all its interest under that certain Deed of Trust dated 08/06/2007 , in the amount of $374,550.00, executed by BRENDEM PLONG, AND MAREINE PLONG, HUSBAND AND WIFE AS JOINT TENANTS to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. and Recorded: 08/16/2007 as Instrument No.: 20071921845 in the County of Los Angeles, State of California.

In witness whereof this instrument is executed.

NATIONSTAR MORTGAGE LLC
On December 17th, 2018

MOHAMED HAMEED, Vice-President

STATE OF Texas
COUNTY OF Dallas

On December 17th, 2018, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas, personally appeared MOHAMED HAMEED, Vice-President, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

COLLEEN BARNETT
Notary Expires: 11/30/2019  #130453013

```
COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453013
```

(This area for notarial seal)

*RO.*NOJ/HATN*12/17/2018 08:34:33 AM* NATTD1NATNA000000000000000458800* CALGS████████ASTATE_TRUST_ASSIGN_ASSN  *BHE*BHENATT*

# EXHIBIT "D"

11/02/2021, A NOTICE OF TRUSTEE SALE OF QLS INSTRUMENT NUMBER # 20211639708.

12/27/2021, A NOTICE OF TRUSTEE'S DEED UPON SALE INTRUMENT NUMBER #20211908685.

This page is part of your document - **DO NOT DISCARD**







## 20211639708

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/02/21 AT 08:00AM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 108.00 |



L E A D S H E E T



202111020230022

00021444044



012843724

SEQ:
01

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

DS7300-20002400

FOR REFERENCE ONLY: 20211639708

Recording requested by:
Quality Loan Service Corp.
    Title365
When recorded mail to:
Quality Loan Service Corporation
2763 Camino Del Rio South
San Diego, CA 92108

---

TS No. **CA-20-887086-AB**                                    SPACE ABOVE THIS LINE FOR RECORDER'S USE
Order No.: **DS7300-20002480**

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code 2923.3)

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 8/6/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial Code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

| | |
|---|---|
| Trustor(s): | **Brendem Plong, and Mareine Plong, husband and wife as joint tenants** |
| Recorded: | **8/16/2007** as Instrument No. **20071921645**    and modified as per Modification Agreement recorded 12/22/2015 as Instrument No. **20151609007** and modified as per Modification Agreement recorded 1/24/2012 as Instrument No. **20120124047** of Official Records in the office of the Recorder of **LOS ANGELES** County, California; |

| | |
|---|---|
| Date of Sale: | **12/6/2021** at **11:00 AM** |
| Place of Sale: | **By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766** |

Amount of unpaid balance and other charges: **$503,312.25**
The purported property address is:    **1720 W IMPERIAL ST, LANCASTER, CA 93534**
Assessor's Parcel No.: **3122-040-082**

TS No.:  **CA-20-887086-AB**

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **855 238-5118** for information regarding the trustee's sale or visit this internet website **http://www.qualityloan.com**, using the file number assigned to this foreclosure by the Trustee: **CA-20-887086-AB**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the internet website. The best way to verify postponement information is to attend the scheduled sale.

**NOTICE TO TENANT:** You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call **855 238-5118**, or visit this internet website **http://www.qualityloan.com**, using the file number assigned to this foreclosure by the Trustee: **CA-20-887086-AB** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall be entitled only to a return of the monies paid to the Trustee. This shall be the Purchaser's sole and exclusive remedy. The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney.

TS No.: **CA-20-887086-AB**

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Date: 10/29/2021                    **Quality Loan Service Corporation**
**2763 Camino Del Rio South**
**San Diego, CA 92108**
**619-645-7711 For NON SALE information only**
**Sale Line: 855 238-5118**
**Or Login to: http://www.qualityloan.com**
**Reinstatement Line: (866) 645-7711 Ext 5318**

Quality Loan Service Corp. by: Ronald Alonzo, Assistant Secretary.

This page is part of your document - DO NOT DISCARD



## 20211908685

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/27/21 AT 08:00AM**

|  |  |
|---|---|
| FEES: | 26.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 26.00 |



LEADSHEET



202112270130004

00021733810



013015261

SEQ:
01

SECURE - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED

DS7300-20002

FOR REFERENCE ONLY: 20211908685

Recording requested by:
Title365

And when recorded mail to:

Nationstar Mortgage LLC d/b/a Mr. Cooper
8950 Cypress Waters Boulevard
Coppell, TX 75019

Forward tax statements to the address given above

TS No.: ████████████           Space above this line for recorders use
Order No.: ████████████

## Trustee's Deed Upon Sale

A.P.N.: 3122-040-082

**Exempt pursuant to Cal Rev and Tax Code §11926**

THE UNDERSIGNED GRANTOR DECLARES:

The Grantee Herein IS the Foreclosing Beneficiary

The amount of the unpaid debt together with costs was:        $505,085.21

The amount paid by the grantee at the trustee sale was:       $404,590.47

The documentary transfer tax is:                              NONE

Said property is in the City of:  LANCASTER, County of LOS ANGELES

QUALITY LOAN SERVICE CORPORATION as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby GRANT and CONVEY to

**Federal Home Loan Mortgage  Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-2,as owner of the Related Mortgage Loan**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of  LOS ANGELES, State of California, described as follows:

**LOT 3 OF TRACT MAP 52655, IN THE CITY OF LANCASTER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 1320, PAGES 96 THROUGH 100 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **Brendem Plong, and Mareine Plong, husband and wife as joint tenants**, as trustor, dated 8/6/2007,  and recorded on 8/16/2007 as instrument number 20071921645 and modified as per Modification Agreement recorded 12/22/2015 as

*When recorded mail and send tax statement to:*
 Nationstar Mortgage LLC d/b/a Mr. Cooper
8950 Cypress Waters Boulevard
Coppell. TX 75019

Instrument No. 20151609007 and modified as per Modification Agreement recorded 1/24/2012 as Instrument No. 20120124047 of Official Records in the office of the Recorder of **LOS ANGELES**, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on 1/10/2019, instrument no **20190028472**, Book xxx, Page xxx, of Official records. The Trustee of record at the relevant time having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten/thirty days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

Default occurred as set forth in a Notice of Breach and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Breach and Election to Sell or the personal delivery of the copy of the Notice of Breach and Election to Sell and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on **12/6/2021** at the place named in the Notice of Sale, in the County of **LOS ANGELES**, California, in which the property is situated. The foreclosing beneficiary, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said trustee the amount being **$404,590.47** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust and instructed said trustee to vest this Trustee's Deed Upon Sale to said Grantee.

*When recorded mail and send tax statement to:*
Nationstar Mortgage LLC d/b/a Mr. Cooper
8950 Cypress Waters Boulevard
Coppell, TX 75019

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

TS No.:

Date: 12/22/2021

**QUALITY LOAN SERVICE CORPORATION**

By: Adriana Banuelos, Assistant Vice President

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of: California)

County of: San Diego)

On _____ DEC 2 2 2021 _____ before me, _____ A. Pilgram _____ a notary public, personally appeared _Adriana Banuelos_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within Instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.          (Seal)

Signature _____ A. Pilgram

A. PILGRAM
Notary Public - California
San Diego County
Commission # 2357509
My Comm. Expires May 14, 2025

# EXHIBIT "E"

01/10/2019, A NOTICE OF DEFAULT WAS RECORDE BY AZTEC
FORECLOSURE CORPORATION IN THE OFFICIAL RECORDS,
LOS ANGELES COUNTY AS INSTRUMENT # 201928472.

Title365

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

AZTEC FORECLOSURE CORPORATION
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

```
COPY of Document Recorded at
Los Angeles, CA County Recorder
20190028472 BK:  PG:
01/10/2019   has not been compared with
original. Original will be returned when
process has been completed.

Fee: 36.00 DTT: 0.00 CA-SB2: 75.00
Total: 111.00
```

_____
                          Space above this line for recorder's use only

APN # 3122-040-082
Property Address:  1720 West Imperial Avenue, Lancaster, CA 93534
Trustee Sale No. 18-006179CXE   Title Order No. DS7300-18004567

## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

PURSUANT TO CIVIL CODE § 2923.3(c), THE SUMMARY OF INFORMATION REFERRED TO ABOVE
IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES
PROVIDED TO THE TRUSTOR(S) AND/OR VESTED OWNERS

### IMPORTANT NOTICE

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION, and you may have the legal right to bring your account in good
standing by paying all of your past due payments plus permitted costs and expenses
within the time permitted by law for reinstatement of your account, which is normally five
business days prior to the date set for the sale of your property.  No sale date may be set
until approximately 90 days from the date this notice of default may be recorded (which
date of recordation appears on this notice).

The amount is $14,072.64 as of 01/08/19 and will increase until your account becomes
current.

                        1 – Notice of Default

T.S. #: 18-006179CXE
ORDER #: DS7300-18004567
Notice of Default – Aztec

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of the property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

> Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-2, as owner of the Related Mortgage Loan c/o Nationstar Mortgage LLC d/b/a Mr. Cooper
> C/O Aztec Foreclosure Corporation, 3636 N. Central Ave., Suite #400, Phoenix, AZ 85012, (602) 638-5700 or (877) 257-0717.

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION

NOTICE IS HEREBY GIVEN THAT: Aztec Foreclosure Corporation is the duly appointed Substituted Trustee, or acting as agent for the beneficiary or trustee under a Deed of Trust dated 08/06/07, executed by Brendem Plong, an Mareine Plong, husband and wife as joint tenants, as trustor(s), to secure obligations in favor of Mortgage Electronic

T.S. #: 18-006179CXE
ORDER #: DS7300-18004567
Notice of Default - Aztec

Registration Systems, Inc. as nominee for Countrywide Home Loans, Inc, as Beneficiary recorded on August 16, 2007 in Instrument No. 20071921645 And Including Loan Modification Agreement Recorded 01/24/2012, Instrument 20120124047 and Freddie Mac Standard Modification Agreement Recorded 12/22/2015, Instrument 20151609007 of official records in the Office of the Recorder of <u>LOS ANGELES</u> County, California, as more fully described on said Deed of Trust.

Including the Note(s) for the sum of <u>$374,550.00</u> that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND/OR INTEREST WHICH BECAME DUE 08/01/18 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND/OR INTEREST, TOGETHER WITH LATE CHARGES, IMPOUNDS, INSURANCE PREMIUMS AND/OR OTHER ADVANCES, TAXES, DELINQUENT PAYMENTS ON SENIOR LIENS, ASSESSMENTS, ATTORNEY'S FEES AND/OR TRUSTEE'S FEES, IF ANY, AND COURT RELATED COSTS ARISING FROM THE BENEFICIARY'S PROTECTION OF ITS SECURITY, AND ANY OTHER FEES AND COSTS PERMITTED UNDER THE DEED OF TRUST, PROMISSORY NOTE, AND RELATED DOCUMENTS AND ALL OF WHICH MUST BE CURED AS A CONDITION OF REINSTATEMENT.

That by reason thereof, the present Beneficiary under such Deed of Trust has deposited with Aztec Foreclosure Corporation, a true and correct copy of such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5 or 2923.55 is attached to this notice.

DATE: _1/3/19_

AZTEC FORECLOSURE CORPORATION
As Trustee or acting as Agent for the beneficiary

Kari Sheehan
Assistant Secretary / Assistant Vice President

## CALIFORNIA DECLARATION OF COMPLIANCE
### (CAL. CIV. CODE § 2923.55)

Borrower(s):          BRENDEM  PLONG & MAREINE  PLONG
Property Address:     1720 WEST IMPERIAL AVENUE  LANCASTER  CA 93534
Trustee's Sale No.:   F_Trustee_Sale_Number

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares as follows:

1. [   ] The mortgage servicer has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55(b)(2). Thirty days have passed since the initial contact was made.

2. [ X ] The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code § 2923.55(f) but has not made contact despite such due diligence. Thirty days have passed since these due diligence efforts were satisfied.

3. [   ] No contact was required because the individual did not meet the definition of "borrower" under California Civil Code § 2920.5(c).

4. [   ] The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" residential real property as defined by California Civil Code § 2924.15.

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Nationstar Mortgage LLC dba Mr. Cooper

Dated:  01/07/2019

_____
Signature of Agent or Employee

Chanc Davis-Document Execution Associate
_____
Printed Name of Agent or Employee

# EXHIBIT "F"

04/04/2019, A NOTICE OF TRUSTEE SALE WAS RECORDED BY AZTEC FORECLOSURE CORPORATION IN THE OFFICIAL RECORDS, LOS ANGELES COUNTY AS INSTRUMENT # 20190293573. AND SECOND RECORDED OF NOTICE OF TRUSTEE SALE ON 05/09/2019 INSTRUMENT # 20190423555

04/26/2019, URGENT – NOTICE OF VIOLATION NOTICE TO CEASE AND DESIST TRUSTEE SALE.  "SEE ATTACHMENT"

This page is part of your document - DO NOT DISCARD



## 20190293573



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/04/19 AT 08:00AM**

Pages:
0004

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 108.00 |



LEADSHEET



201904040180019

00016452775



009732388

SEQ:
01

SECURE – 8:00AM



THIS FORM IS NOT TO BE DUPLICATED

E08_190403_600002

FOR REFERENCE ONLY: 20190293573

RECORDING REQUESTED BY:
Title365

AND WHEN RECORDED MAIL TO:
Name: AZTEC Foreclosure Corporation
Address: 3636 N. Central Avenue, Suite 400
Phoenix, AZ 85012

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Notice of Trustee's Sale

TITLE OF DOCUMENT

WHEN RECORDED MAIL TO:

Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

Trustee Sale No. 18-006179 CXE
DS7300-18004567
APN 3122-040-082

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

_ATTENTION RECORDER:_ THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY – PURSUANT TO CIVIL CODE SECTION 2923.3(a)

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 08/06/07. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **05/08/19** at **11:00 am,** Aztec Foreclosure Corporation as the duly appointed Trustee under and pursuant to the power of sale contained in that certain Deed of Trust executed by **Brendem Plong, an Mareine Plong, husband and wife as joint tenants,** as Trustor(s), in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Home Loans, Inc, as Beneficiary, **Recorded on 08/16/07** in Instrument No. **20071921645 And Including Loan Modification Agreement Recorded 01/24/2012, Instrument 20120124047 and Freddie Mac Standard Modification Agreement Recorded 12/22/2015, Instrument 20151609007** of official records in the Office of the county recorder of **LOS ANGELES** County, California; **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH** (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state), **By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766,** all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California described as:
**1720 WEST IMPERIAL AVENUE, LANCASTER, CA 93534**

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$454,265.88** (Estimated)

Notice of Trustee's Sale
T.S. #:  18-006179 CXE
ORDER #:    DS7300-18004567

Accrued interest and additional advances, if any, will increase this figure prior to sale.

The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call or visit the Internet Web site, using the file number assigned to this case 18-006179. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

| www.homesearch.com<br>800-758-8052 | Or | Aztec Foreclosure Corporation<br>(877) 257-0717<br>www.aztectrustee.com |
|---|---|---|

DATE:  ___4- 2-19___

AZTEC FORECLOSURE CORPORATION

*[signature]*

Elaine Malone
Assistant Secretary / Assistant Vice President
Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012
Phone: (877) 257-0717 or (602) 638-5700
Fax:  (602) 638-5748
www.aztectrustee.com

This page is part of your document - DO NOT DISCARD



## 20190423555



**Pages:**
0004

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**05/09/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 108.00 |



LEADSHEET



201905090140025

00016590183



009811809

SEQ:
01

SECURE - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED

E08_190508_

FOR REFERENCE ONLY: 20190423555

RECORDING REQUESTED BY:
Title365

AND WHEN RECORDED MAIL TO:
Name: AZTEC Foreclosure Corporation
Address: 3636 N. Central Avenue, Suite 400
            Phoenix, AZ 85012

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Notice of Trustee's Sale

TITLE OF DOCUMENT

WHEN RECORDED MAIL TO:

Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

Trustee Sale No. 18-006179 CXE
DS7300-18004567
APN 3122-040-082

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

*ATTENTION RECORDER:* THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY – PURSUANT TO CIVIL CODE SECTION 2923.3(a)

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 08/06/07. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **06/05/19** at **11:00 am,** **Aztec Foreclosure Corporation** as the duly appointed Trustee under and pursuant to the power of sale contained in that certain Deed of Trust executed by **Brendem Plong, an Mareine Plong, husband and wife as joint tenants,** as Trustor(s), in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Home Loans, Inc, as Beneficiary, Recorded on **08/16/07** in Instrument No. 20071921645 And Including Loan Modification Agreement Recorded 01/24/2012, Instrument 20120124047 **and Freddie Mac Standard Modification Agreement Recorded 12/22/2015, Instrument 20151609007** of official records in the Office of the county recorder of LOS ANGELES County, California; **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH** (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state), **By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766,** all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California described as:
**1720 WEST IMPERIAL AVENUE, LANCASTER, CA 93534**

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$458,742.61** (Estimated)

April 26, 2019

# URGENT - NOTICE OF VIOLATION
## NOTICE TO CEASE AND DESIST TRUSTEE SALE

TO:  **Nationstar Mortgage LLC, d/b/a MR. COOPER, Servicer**
c/o Bray **Jay, President; Amar Patel, CFO; Anthony L Ebers, CEO**
8950 Cypress Waters Blvd., Coppell, TX  75019
AND
**AZTEC FORECLOSURE CORPORATION, Trustee**
**c/o Gerald Shapiro, President and Director; Elaine Malone, Asst. V.P.**
2121 Waukegan Road, Bannockburn, IL  60015

ATTN:  **LEGAL DEPARTMENT**

RE:  **TS # 18-006179 CXE**          **Scheduled Sale Date: 05-08-2019**
Order # DS7300-18004567
Loan # 0597261239
Property: **1720 Imperial Street, Lancaster, CA 93534**
APN:  **3122-040-082**

NOTICE TO AGENT IS NOTICE TO PRINCIPAL, NOTICE TO PRINCIPAL IS NOTICE TO AGENT

**FOR THE RECORD, Notice** is hereby given to all above addressed parties, and their employees, representatives, agents, and assigns, to **Cease and Desist** proceeding with the above referenced Trustee Sale for failure to comply with the law. No party is above the law and each said party is personally liable without immunity for non-disclosure and cover-up of their criminal act and willfully conspiring to perpetrate an unlawful Foreclosure Sale. Said parties must provide homeowner a written acknowledgement of their error and confirmation of the cancellation of the scheduled foreclosure sale no later than **May 3, 2019, at 5:00 PM, PST,** and within sixty (60) business days, pursuant to State/Federal law, **correct the following violation by rescinding the Notice of Sale**:

**Violation of CCP 2924 for the California Foreclosure Rules and Procedures** requiring a full ninety (90) day period of time to elapse after the recordation of the "Notice of Default and Election to Sell", 'NOD', before recording a "Notice of Sale", 'NOS', to lawfully allow the homeowner to remedy and settle the alleged default during the NOD period of time.  On April 2, 2019, Trustee representative **Elaine Malone** perjured herself by testifying and confirming in the NOS that **"more than three months had elapsed since the recordation of the NOD"**.  Evidence on record clearly proves that **not even three (3) months** had elapsed and, therefore, said NOS is **VOID ab initio**. Such recordation is also a criminal act and must be **rescinded**.  On and For the Record with the Los Angeles County Recorder's office, evidence of the violation is as follows:

1 of 2

1. On January 10, 2019, a "Notice of Default and Election to Sell" was recorded.
2. On April 04, 2019, a "Notice of Sale", (NOS), was recorded.

The absolute earliest date that a "Notice of Sale" could have been lawfully recorded is April 11, 2019.  Trustee aggressively, erroneously and unlawfully recorded the **VOID** NOS. Additionally, Trustee denied homeowner their Homeowner Bill of Rights regarding foreclosure procedures and denied homeowner their rights of due process under the law.

Failure of the parties, their employees, representatives, agents or assigns, to immediately **Cancel** the scheduled Foreclosure Sale, and **Rescind** the recorded **VOID** NOTICE OF SALE, would be an arrogant act in defiance of the law and unlawfully continuing collection of the above referenced loan via the foreclosure sale process for TS # 18-006179 CXE, and said blatant defiance will result in legal actions personally against each and every party perpetrating the cover-up of a wrongful and fraudulent foreclosure sale.

**NOTE: Recording a VOID instrument is a Criminal Act.  The recorded Notice of Sale in this instant matter is VOID, not Voidable. It has no force or effect in law and must be RESCINDED.  A simple Postponement of this sale will NOT correct this violation. You are advised to seek legal counsel and choose your actions accordingly.**

c.c.:

**California Governor:  Gavin Newsom**

**California Attorney General:  Xavier Becerra)**

**U.S. Senator:  Dianne Feinstein**

**U.S. Senator:  Kamala Harris – (former CA Atty. General/Author of HOBR)**

**U.S. Department of Justice**

**Congressman:  Kevin McCarthy**

**Federal Trade Commission**

**Office of Housing Enterprise Oversight**

**Consumer Financial Protection Bureau**

**Office of RESPA and ILS / HUD**

# EXHIBIT "G"

CERTIFIED FORENSIC AUDIT BY ARTHUR A. BERNARDO AND
NOTICE OF BLOOMBERG PROPERTY ANALYSIS REPORT.

INCLUDING PAGES:   3, 4, 10, 11, 16, 18, 19, 22, 23, 24, 37, 38, 39,
40, 41, 42, 43, 44, 45,



## BORROWERS DOCUMENT SHOWS MERS MIN# 1000157-0007477237-3

RECORDING REQUESTED BY
STEWART TITLE

Recording Requested By:
S. HARRISON

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Prepared By:
VERONICA L. HERRINGTON

8606116003

432-12366-KAW                    00014262675806007
[Escrow/Closing #]               [Doc ID #]

21

[Space Above This Line For Recording Data]

### DEED OF TRUST

MIN 1000157-0007477237-3

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 06, 2007 , together with all Riders to this document.
(B) "Borrower" is
BRENDEN FLONG, AND MARRISSE FLONG, HUSBAND AND WIFE AS JOINT TENANTS

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16
-6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291    Form 3005 1/01
CONVVA

20071921645

08/16/07

FRAUD STOPPERS PMA COPYRIGHT 2007-2020
-All Rights Reserved-



## MERS SEARCH RESULT ON MIN# 1000157-0007477237-3
### (As of July 22, 2020)

The loan is *registered* within the MERS database showing Bank of America, N.A. as Servicer and Federal Home Loan Mortgage Corporation (Freddie Mac) as Investor.

**MERS** ServiceRID
www.mers-serviceid.org

1 record matched your search:

*Need help?*

MIN: **1000157-0007477237-3**    Note Date: **08/06/2007**    MIN Status: **Inactive**

Servicer:  Bank of America, N.A.    Phone: **(800) 669-6607**
**Simi Valley, CA**

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

*Select borrower type and enter borrower information to see Investor for MIN 1000157-0007477237-3.*

◉  **Investor for Individual Borrower**

*Your entries may be either upper or lower case.*
*Fields marked ✱ are required.*
**Last Name:** PLONG    ✱
**SSN:** [    ] - [    ] - [    ]   ✱

☐ *By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer. ✱*

Submit

◯  **Investor for Corporation/Non-Person Entity Borrower**

Servicer:  Bank of America, N.A.    Phone: **(800) 669-6607**
**Simi Valley, CA**

Investor:  **Federal Home Loan Mortgage Corporation**

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



FRAUD STOPPERS PMA COPYRIGHT 2007-2020
-All Rights Reserved-





# REPORT SUMMARY

**Deed of Trust:**

- On AUGUST 4, 2007, Debtors BRENDEM PLONG & MAREINE PLONG executed a negotiable promissory note and a security interest in the form of a DEED OF TRUST in the amount of $374,550.00. This document was filed as document number 2007.1921645 in the Official Records of Los Angeles County and was recorded on August 16, 2007. *The original lender of the promissory note is Countrywide Home Loans, Inc. Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is not named as the payee of the note, but is named as acting solely as a "nominee" for the lender as the beneficiary of the security interest Security Deed.*

**Securitization (The Note):**

- The NOTE may have been sold, transferred, assigned and securitized into the FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 3366 with an issue date of September 28, 2007.

**Assignment of Deed of Trust:**

- On May 17, 2012, a Corporation Assignment of Deed of Trust was recorded in the Official Records, Los Angeles County as instrument number 2012.741476. Document was assigned to Bank of America, N.A and signed by Janet Gordon for Mortgage Electronic Registration Systems, Inc. without disclosure of her employment. However, there is no indication that Bank of America was directly involved in the ownership of this loan. They were only a purported successor servicing agent to COUNTRYWIDE HOME LOANS, INC. based on Bank of America acquisition of COUNTRYWIDE HOME LOANS, INC. operations; the Freddie Mac acquisition date is to be determined. As such, this should be considered as a document of impropriety that clouds property title unless rescinded.

- Examiner recommends review of evidence of a negotiated transfer (e.g. purchase/sale agreement; notarized note endorsements; verifiable proof of funds; declarations of value; receipts for transfer taxes paid) prior to acceptance of this document as valid.

**Corporation Assignment of Deed of Trust:**

- On October 23, 2012, a Corporation Assignment of Deed of Trust was recorded in the Official Records, Los Angeles County as instrument number 2012.1606089. Document was assigned to Nationstar Mortgage LLC and signed by Valerie White for Bank of America, N.A. without disclosure of her employment. As such, this should be considered as a document of impropriety that clouds property title unless rescinded.

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



## ASSIGNMENT OF DEED OF TRUST 05/17/2012

Janet Gordon Assigned the Deed of Trust to Bank of America. This position of unilateral transfer is further strengthened by the fact that there is no evidence of verifiable proof of funds; a note endorsement; a bill of sale; a declaration of value; or transfer taxes as having been paid to Los Angeles County "for value received".

Recording Requested By:
Bank of America
Prepared By: Bank of America
1800 Tapo Canyon Road
Simi Valley, CA 93463
800-444-4302
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Doc ID#    1441 4245679038653

Property Address:
3720 Imperial St
Lancaster, CA 93536-2867

### ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP whose address is 8489 WESTWOOD CENTER, VIENNA, VA 22182 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:        COUNTRYWIDE HOME LOANS, INC.
Original Borrower(s):   BRENDEM PLONG, AND MARLENE PLONG, HUSBAND AND WIFE AS JOINT TENANTS
Original Trustee:       RECONTRUST COMPANY, N.A.
Date of Deed of Trust:  8/6/2007
Original Loan Amount:   $374,555.00

Recorded in Los Angeles County, CA on: 8/16/2007, book N/A, page N/A and instrument number 20071921944

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

— MAY 10 2012 —

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
    Janet Gordon
    Assistant Secretary

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



## PAGE 2 OF ASSIGNMENT SIGNED BY JANET GORDON

State of California
County of Ventura

On **MAY 10 2012** before me, Virginia M Claudet-Alfaro , Notary Public, personally appeared
Janet Gordon

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Virginia M Claudet-Alfaro
My Commission Expires: May 28, 2015

(Seal)

VIRGINIA M. CLAUDET-ALFARO
Commission # 1938836
Notary Public - California
Ventura County
My Comm. Expires May 28, 2015

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



## SUBSTITUTION OF TRUSTEE SHOULD BE EXECUTED

Effective Foreclosure Timeline Management Reference Guide          

### *Submit All Documentation to the Foreclosure Attorneys in a Timely Manner*

One of the most common causes of delays in the foreclosure process is insufficient documentation provided to the attorney when you refer the loan for foreclosure.

- At a minimum, the following documentation is required for foreclosure referral. Additional documentation may be required for foreclosure referral, depending on the state in which the subject property is located.

  - Copies of the Note (or the original Note if required by applicable law) evidencing the indebtedness along with any intervening assignments, powers of attorney or any applicable modifying agreement, such as a modification, a conversion agreement or an assumption of indebtedness and release of liability agreement.
  - Mortgage or Deed of Trust
  - Copy of the original title insurance policy
  - Copy of the breach, acceleration or demand letter sent to the borrower
  - Military affidavits
  - Executed **Substitution of Trustee**, as necessary
  - Payoff statement with per diem interest as of the date of the foreclosure referral

- Address missing documentation early and with urgency. Quick resolution to missing documentation enables the law firm to begin the foreclosure process and respond to any filings or demands.

- Respond to requests for information and provide all reinstatement and payoff figures to the attorney within two business days of the request.

http://www.freddiemac.com/learn/pdfs/service/eff_timeline_mgmt.pdf

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



**American Banker** states that foreclosure support documents (e.g. Assignments of Mortgage) should be prepared at time of transfer instead of by bank employees claiming to represent lenders that no longer exist:



by Kate Berry
AUG 31, 2011 5.47pm ET

🖶 Print   ✉ Email   🗐 Reprints

(15) Comments

🐦 Tweet  66   in Share  21   f Like  76   ⬚ +1

Some of the largest mortgage servicers are still fabricating documents that should have been signed years ago and submitting them as evidence to foreclose on homeowners.

The practice continues nearly a year after the companies were caught cutting corners in the robo-signing scandal and about six months after the industry began negotiating a settlement with state attorneys general investigating loan-servicing abuses.

Several dozen documents reviewed by *American Banker* show that as recently as August some of the largest U.S. banks, including Bank of America Corp., Wells Fargo & Co., Ally Financial Inc., and OneWest Financial Inc., were essentially backdating paperwork necessary to support their right to foreclose.

Some of documents reviewed by *American Banker* included signatures by current bank employees claiming to represent lenders that no longer exist.

**RELATED LINKS**

U.S. Bank Stands Out as a Mortgage Bond Trustee with Teeth

Robo-Signing Settlement Needs to Go All the Way

Are the State AG Mortgage Settlement Talks Falling Apart?

N.Y. AG Moves to Intervene in B of A-Bondholder Settlement

**RELATED GRAPHIC**

⊕ Enlarge This Image



http://www.americanbanker.com/issues/176_170/robo-signing-foreclosure-mortgage-assignments-1041741-1.html

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



## BLOOMBERG SEARCH SECTION

On **July 22, 2020**, I researched the Bloomberg online Database at the request of **Certified Forensic Loan Auditors, LLC** on behalf of **BRENDEM PLONG & MAREINE PLONG** whose property address is noted herein above. The Loan Level Data search conducted using Bloomberg's terminal did not reveal matching characteristics based on Original Amount: **$374,550.00**; Origination Date: **AUGUST 4, 2007**; Location of Property: **CALIFORNIA**; Property Type: **Single Family Residence;** Occupancy: **Owner Occupied**; Zip Code **93534**.  Examiner did, however, locate a REMIC TRUST that matches the characteristics for securitizing this loan, namely the **FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 3366** issued September 28, 2007.  This is a trust formed shortly after loan execution sponsored by Freddie Mac in which Morgan Stanley is the underwriter.

**FREDDIE MAC claims ownership of the loan on its web site.  The MERS database shows the "Investor" as Federal Home Loan Mortgage Corporation (aka Freddie Mac.)  Freddie Mac does not provide historical alleged loan ownership information on its web site, nor does it provide loan level detail.**

**Identification of exact Freddie Mac or other corporate portfolio may be gotten through a Qualified Written Request, a Request for Information under Regulations X or Z, voluntary lender disclosure, a Freedom of Information Act request as applicable, or discovery through litigation.**

Screen shots of this trust from the Bloomberg System follow:



# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) ANALYSIS

- The Deed of Trust has MIN number 1000157-0007477237-3 and is registered at the MERS SERVICER ID website https://www.mers-servicerid.org/sis//search showing Bank of America, N.A. as Servicer and Freddie Mac as Investor.

- Although MERS records an assignment in the real property records, the promissory note which creates the legal obligation to repay the debt has not been transferred nor negotiated by MERS.

- MERS is never entitled to receive a borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a foreclosure or MORTGAGE sale.

- MERS is never the owner of the promissory note for which it seeks foreclosure.

- MERS has no legal or beneficial interest in the loan instrument underlying the security instrument for which it serves as "nominee".

- MERS has no legal or beneficial interest in the mortgage indebtedness underlying the security instrument for which it serves as "nominee".

- MERS has no interest at all in the promissory note evidencing the mortgage indebtedness.

- MERS is not a party to the alleged mortgage indebtedness underlying the security instrument for which it serves as "nominee".

- MERS has no financial or other interest in whether or not a mortgage loan is repaid.



# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) ANALYSIS

The loan is *registered* within the MERS database showing Bank of America, N.A. as Servicer and Federal Home Loan Mortgage Corporation (Freddie Mac) as Investor.

**MERS**
*ServicerID*
www.mers-servicerid.org

1 record matched your search:

Need help? ❓

MIN: **1000157-0007477237-3** | Note Date: **08/06/2007** | MIN Status: **Inactive**

Servicer:  Bank of America, N.A.
**Simi Valley, CA**

Phone: **(800) 669-6607**

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

*Select borrower type and enter borrower information to see Investor for MIN 1000157-0007477237-3.*

◉ **Investor for Individual Borrower**

*Your entries may be either upper or lower case.*

*Fields marked ✱ are required.*

Last Name:  PLONG                    ✱

SSN:  [    ] - [    ] - [        ]    ✱

☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer. ✱

[ Submit ]

○ **Investor for Corporation/Non-Person Entity Borrower**

Servicer:  Bank of America, N.A.
**Simi Valley, CA**

Phone: **(800) 669-6607**

Investor:  **Federal Home Loan Mortgage Corporation**

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



ξ For traditional lending prior to Securitization, the original Deed recording was usually the only recorded document in the Chain of Title. That is because banks kept the loans, and did not sell the loan, hence, only the original recording being present in the banks name.

The advent of Securitization, especially through "Private Investors" and not Fannie Mae or Freddie Mac, involved an entirely new process in mortgage lending. With Securitization, the Notes and Deeds were sold once, twice, three times or more. Using the traditional model would involve recording new Assignments of the Deed and Note as each transfer of the Note or Deed of Trust occurred. Obviously, this required time and money for each recording.

(The selling or transferring of the Note is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Note, and keep a small portion of the payment for Servicing Fees. Usually, when a homeowner states that their loan was sold, they are referring to Servicing Rights.)

ξ Securitizing a Loan

Securitizing a loan is the process of selling a loan to Wall Street and private investors. it is a method with many issues to be considered. The methodology of securitizing a loan generally followed these steps:

- A Wall Street firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the Wall Street firm "pre-sold" the bonds.

- The Wall Street firm would approach a lender and usually offer them a warehouse Line of Credit. The Warehouse Credit Line would be used to fund the loan. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and Mortgage Loan Purchase Agreement. These documents outlined the procedures for the creation of the loans and the administering of the loans prior to, and after, the sale of the loans to Wall Street.

- The Lender, with the guidelines, essentially went out and found "buyers" for the loans, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Lender would execute the loan and fund it, collecting payments until there were enough loans funded to sell to the Wall Street firm who could then issue the bonds.

- Once the necessary loans were funded, the lender would then sell the loans to the "Sponsor", usually either a subsidiary of the Wall Street firm, of a specially created Corporation of the lender. At this point, the loans are separated into "tranches" of loans, where they will be eventually turned into bonds.

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



- Next, the loans were "sold" to the "Depositor." This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the lender or other entities are protected from what might happen to the loans, and/or the loans are "protected" from the lender. The "Depositor" would be, once again, created by the Wall Street firm or the lender.

- Then the "Depositor" would place the loans into the Issuing Entity, which is another entity created solely for the purpose of selling the bonds.

- Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders received their monthly payments.

ξ COUNTRYWIDE HOME LOANS, INC. was a "correspondent lender" that originated mortgage loans. These loans, in turn, based on the research performed may have been sold and transferred into a "federally-approved securitization" trust named the FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 3366.

ξ The Note and Deed have taken two distinctly different paths. The Note based on the research performed may have been securitized into the FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 3366.

ξ The loan was originally made to COUNTRYWIDE HOME LOANS, INC. and based on the research performed may have been sold and transferred to FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 3366. There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



## AFFIDAVIT OF FACTS

STATE OF CALIFORNIA          )
                              ) sv.: AFFIDAVIT

COUNTY OF LOS ANGELES   )

## RE: BRENDEM PLONG & MAREINE PLONG

I, ARTHUR A BERNARDO, a citizen of the United States and the State of CALIFORNIA over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1. I have utilized the Bloomberg Professional Service for more than 10 years, and I was Certified in (2012) by Bloomberg, LP through Ambassador Program (40 hours) CFLA (AMS)  I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the Bloomberg terminal.

2. I am an Expert Analyst on Residential Mortgage Backed Securities Data and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have led instruction and completed more than 1,000 hours of live instruction for students on the topic of residential mortgage backed securities and Mortgage Securitization Auditing. I have supervised the production of more than ten thousand (10,000) Securitized Analysis Reports in residential real estate mortgage investigation in 50 states, the District of Columbia, Puerto Rico, the United Kingdom, Ireland, South Africa, and Australia. I have supervised expert witness testimony of my staff members including Michael Carrigan as an Expert Witness in Court on more than 20 occasions, and have trained auditors in California, Florida, Nevada, New York, New Jersey, Texas and Virginia and via the Internet in webinar format.

3. I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of mortgage and loan related documents and information.

4. The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

---

[1] The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



5. July 22, 2020, I researched the Bloomberg online Database at the request of BRENDEM PLONG & MAREINE PLONG whose property address is 1720 WEST IMPERIAL AVENUE LANCASTER, CA 93534.

6. Based on the information I was provided, BRENDEM PLONG & MAREINE PLONG signed a Promissory Note in favor of COUNTRYWIDE HOME LOANS, INC. on AUGUST 4, 2007.

7. The loan was not identified in any publicly reporting trust. Federal Home Loan Mortgage Corporation (a/k/a Freddie Mac) is stated on the Mortgage Electronic Registration Systems, Inc. web site as "Investor", and is an indication of past or current purported ownership interest by Freddie Mac. A qualifying trust formed shortly after the execution of the loan on AUGUST 4, 2007 is the FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 3366 with a closing date of September 28, 2007, which is consistent with the stated FREDDIE MAC acquisition date of September 28, 2007. The underwriter is Morgan Stanley and the Sponsor and Trustee is Freddie Mac.

8. The basis of the identification of Loan in FREDDIE MAC MULTICLASS CERTIFICATES, SERIES 3366 was made from the following factors/information that correspond with BRENDEM PLONG & MAREINE PLONG's loan documents provided: Original Amount: $374,550.00; Origination Date: AUGUST 4, 2007; Location of Property: CALIFORNIA; Property Type: Single Family Residence; Occupancy: Owner Occupied; Zip Code: 93534.

By:

ARTHUR A BERNARDO
Certified Mortgage Securitization Auditor / Bloomberg Specialist

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



A Notary public or other completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**STATE OF CALIFORNIA**        )
                              ) sv.: **AFFIDAVIT**
**COUNTY OF LOS ANGELES**    )

On ___07/23___ , 2020 before me, _MYUNG HO SONG, NOTARY PUBLIC_ ,
                                          (Notary Public)

personally appeared **ARTHUR A BERNARDO**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> MYUNG HO SONG
> Notary Public - California
> Los Angeles County
> Commission # 2320492
> My Comm. Expires Feb 29, 2024

My commission Expires ___02/29/2024___

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



Exhibit I

# TRANSACTION HISTORY

**Transaction History Report**
1720 Imperial St, Lancaster, CA 93534-2867
APN: 3122-040-082

Los Angeles County Data as of: 07/10/2020

Current Owner: Plong Brendem / Plong Mareine M

Vesting:
2007 - Present

### LIENS

| Date | Type | Verified | Amount | Borrower(s) | Lender | Loan Type | Tate / Term | Rate | Document # |
|---|---|---|---|---|---|---|---|---|---|
| 01/24/2012 | Trust Deed/Mortgage | | $431,844 | Plong Brendem / Plong Mareine | Bac Home Loans Servicing LP | Conventional | Fix / | | 2012 124047 |
| 08/16/2007 | Trust Deed/Mortgage | ✓ | $374,550 | Plong Brendem / Plong Mareine | Countrywide Home Loans Inc | Conventional | Var / | | 2007 1921645 |
| 05/17/2012 | Assignment | | | | | | | | 2012 741476 |
| 10/23/2012 | Assignment | | | Plong Brendem & Mareine | Nationstar Mtg LLC | | | | 2012 1606085 |
| 07/09/2013 | Notice Of Default | | $14,726 | Plong Brendem & Mareine | Countrywide HM Lns Inc | | | | 2013 1002673 |
| 10/04/2013 | Notice Of Sale | | | Plong Brendem & Mareine | Countrywide HM Lns Inc | | | | 2013 1438982 |
| 04/24/2014 | Rescission Of Lis Pendens/Notice Of Default/Notice Of Sale | | | Plong Brendem & Mareine | | | | | 2014 418805 |
| 12/22/2015 | Loan Modification Agreement | | | Plong Brandon & Mareine | | | | | 2015 1609007 |
| 12/24/2018 | Assignment | | | Plong, Brendem,Plong, Mareine | Federal Home Ln Mortgage Corporation/Freddie Mac Seasoned CR | | | | 2018 1300032 |
| 01/10/2019 | Notice Of Default | | $14,072 | Plong Brendem | | | | | 2019 28472 |
| 04/04/2019 | Notice Of Sale | | | Plong Brendem | | | | | 2019 293573 |
| 05/09/2019 | Notice Of Sale | | | Plong Brendem | | | | | 2019 423606 |

### CONVEYANCES

| Date | Rec Date | Verified | Price | Type | Title Company | Buyer | Seller | Document # |
|---|---|---|---|---|---|---|---|---|
| 06/20/2019 | 06/21/2019 | | | Nominal/Quit Claim | Plong Brendem / Plong Mareine M | Plong Brendem Mareine M | | 2019 593526 |
| 07/16/2007 | 08/16/2007 | ✓ | $419,500 | Full Value | Lennar Title | Plong Brendem / Plong Mareine | Gigafan Homes LLC | 2007 1921644 |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.     PAGE 1 OF 1

*FRAUD STOPPERS PMA COPYRIGHT 2007-2020*
*-All Rights Reserved-*



Title information data source: First American Title **www.datatree.com**

1. Page 1 Line 1.   BRENDEM PLONG & MAREINE PLONG acquired a loan on the property on AUGUST 4, 2007 in the amount of $374,550.00.  This primary active loan which was recorded on August 16, 2007 is the subject of this report.

2. Page 1 Line 2-7.   Invalid foreclosure action.  Assignment of Deed of Trust made by agent of Assignee without any known involvement by Assignor.  Nationstar Mortgage, LLC, an unproven purchaser of loan had employee pose as Assignor representative without disclosure of purchase supporting documentation almost 5 years following Freddie Mac probable acquisition.   Subsequent recorded documents of foreclosure are dependent upon this document. All documents should be rescinded and the then notarized Assignment of Deed of Trust for equivalent value with verifiable proof of funds and note endorsement executed prior to Freddie Mac acquisition should be recorded for rightful foreclosure to proceed in validating the real parties in interest and in compliance with California Uniform Commercial Code.

3. Foreclosure action dependent upon invalid Assignments of Deed of Trust.

7. For Declaratory Relief, including, but not limited to the following Decrees of this Court that:    a. Plaintiffs, Plaintiffs are the prevailing party,

## FOR THE FOURTEENTH CAUSE OF ACTION:

1. For Compensatory Damages in an amount to be determined by proof at trial,
2. For Special Damages in an amount to be determined by proof at trial,
3. For General Damages in an amount to be determined by proof at trial,
4. For Punitive Damages in an amount to be determined by proof at trial,
5. For Restitution as allowed by law,
6. For Attorney's Fees and Costs of this action'
7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:
   a. Plaintiffs, Plaintiffs are the prevailing party,
   b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property,
   c. The Sponsor has no enforceable secured or unsecured claim against the Property,
   d. The Depositor has no enforceable secured or unsecured claim against the Property,
   e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property,

## FOR THE FIFTEENTH CAUSE OF ACTION:

1. For Compensatory Damages in an amount to be determined by proof at Trial,
2. For Special Damages in an amount to be determined by proof at trial,
3. For General Damages in an amount to be determined by proof at trial,
4. For Punitive Damages as allowed by law,
5. For Restitution as allowed by law,
6. For Attorney's Fees and Costs of this action,
7. For Declaratory Relief, including, but not limited to the following Decrees of this Court that:    a. Plaintiff, Plaintiff is the prevailing party,

date: April 29, 2022

BREN DEM PLONG
By mm Plong plaintiff proper

Mareine m Plong

Mareine M. Plong, Plaintiff Pro Pe

## VERIFICATION

I'm Mareine M. Plong, [Sovereign] Pro Per is the Plaintiffs in the above-entitled matter and have personal knowledge to testify to the matter stated therein. I have read the facts and allegations and declare under penalty of perjury in and for the State of California that the above is true and correct to the best of my knowledge.

*Mareine m Plong*

Mareine M. Plong, Pro Per
c/o 1720 W. Imperial Ave
Lancaster, California [93534]

## CALIFORNIA ACKNOWLEDGMENT

A notary public or other officer complete this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )

County of Los Angeles     )

SUBSCRIBED AND SWORN to this 30th, day of April, 2022, Before me, Claudia Aldape_____, a Notary Public and personally appeared Mareine M. Plong, [Sovereign] who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity(ies) and that by her signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

CLAUDIA ALDAPE
Notary Public - California
Los Angeles County
Commission # 2298659
My Comm. Expires Jul 26, 2023

NOTARY PUBLIC

My Commission expires on July 26 2023

COMPLAINT FOR WRONGFUL FORECLOSURE, DECLARATORY RELIEF, ETC.

- Declaring that Defendants lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and/or to sell the subject properties,
- Declaring that the trust deed is not a lien against the subject properties, ordering the immediate release of the trust deed of record, and quieting title to the subject properties in Plaintiffs and against Defendants and all claiming by, through or under them,
- A refund of any wrongfully or improperly collected fees and payment to Defendants to which it had no right,
- Pre-and post-judgement interest at the maximum rate allowed by law,
- Monetary relief over **$100,000.00 but not more than $2,000,000.00** and
- Such other and further relief at law and/or in equity to which Plaintiffs may be justly entitled including but not limited to damages within the jurisdictional limits this Court, together with pre-judgment and post-judgment interest as are allowed by law.

**FOR THE FIRST CAUSE OF ACTION:**

1. For an Order, requiring Defendants to reinstate Plaintiffs on Title on their Property and or restraining order preventing Defendants and his/her, or its agent, employees, officers' attorneys, and representative from engaging in or performing any of the following acts:    (i) offering, or advertising this property for sale and (ii) attempting to transfer title to this property and or (iii) holding any auction therefore,
2. For Special Damages in an amount to be determined by proof at trial,
3. For General Damages in an amount to be determined by proof at trial,
4. For Punitive Damages as allowed by law,
5. For Restitution as allowed by law,
6. For Attorney Fees and Cost of this action,
7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:
   a. Plaintiffs, Plaintiffs are the prevailing party,
   b. The Trustees of the Trust have no enforceable secured or unsecured claim against the Property
   c. The Sponsor has no enforceable secured or unsecured claim against the Property,